785 So.2d 880 (2001)
Patricia Licette VENTURA
v.
Rafael Carlos RUBIO, Sr.
No. 2000-CA-0682.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 2001.
*883 Robert D. Levenstein, Laplace, Counsel for Plaintiff/Appellee.
Rafael Rubio, Sr., Metairie, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge MAX N. TOBIAS, Jr.
PER CURIAM.
Rafael Carlos Rubio, Sr. ("Rubio") devolutively appeals a judgment of the Civil District Court dated October 29, 1999. The motion for appeal was filed with the clerk of court on November 24, 1999; the order granting the appeal was signed by the trial judge on November 30, 1999. Because the issues addressed below are date sensitive, we provide a detailed date history of this case as reflected by the record before us.
On June 26, 1998, Patricia Licette Ventura ("Ventura") filed a petition for a Civil Code Article 103 divorce from Rubio. In addition, she asked for a judgment in her favor of joint custody of the parties' two minor children, Rafael Carlos Rubio, Jr. and Ericka Regina Rubio, with herself named as the primary physical custodian, and for child support. On July 7, 1998, the court issued an order setting a hearing on the issues of custody and child support for August 26, 1998. A blank sheriffs return appears in the record; nothing in the record shows that the petition or the July 7, 1998 order was ever served upon Rubio.
On July 29, 1998, Ventura's counsel filed a motion to continue the August 26, 1998 hearing asserting a conflict in his schedule and a lack of service of either the petition or the July 7, 1998 order. By order of August 7, 1998, the court granted a continuance until October 7, 1998. On August 25, 1998, Ventura's counsel again filed a *884 motion for continuance alleging a conflict in his schedule and a lack of service of the petition and order. The court granted the continuance on September 4, 1998, and reset the matter for hearing on October 28, 1998. On October 14, 1998, Ventura filed a motion for the appointment of a special process server pursuant to La. C.C.P. art. 1293, and the court issued an order dated October 22, 1998 granting the motion.
Rubio filed a responsive pleading on March 25, 1999, in which he admitted the allegations relative to the divorce and admitted that joint custody was in the best interest of the children.
On April 8, 1999, Ventura's counsel filed a motion to reset the matters last set for hearing on October 28, 1998. An order of the court dated April 20, 1999 reset the matters for June 16, 1999. On May 20, 1999, Ventura's counsel filed another motion to reset this hearing. By order of May 27, 1999, the court confirmed that the matter was reset for hearing on June 16, 1999. On June 8, 1999, Rubio was served with notice of the pending June 16, 1999 hearing date.
On June 3, 1999, Ventura's counsel filed a motion to continue the June 16, 1999 hearing asserting a conflict in his schedule and further asserting that counsel for Rubio concurred in the motion for a continuance. On June 8, 1999, the court granted the motion for continuance and reset the hearing for August 31, 1999. During that time, on June 4, 1999, Rubio filed a request for notice of judgment citing La. C.C.P. arts. 1572, 1913 and 1914. Another order bearing a filing date of June 16, 1999, was issued by the court on June 22, 1999 setting the divorce matter for trial on August 31, 1999.
On August 31, 1999, the matter came for trial. A number of issues, including child custody and visitation, child support, and evaluation of the parties, were addressed. The court issued a written judgment dated October 29, 1999 as a result of that hearing. Although the transcript of the hearing clearly indicates that all orders, except for the divorce, were intended to be interim or temporary, the October 29, 1999 judgment (hereinafter, "the judgment") fails to specifically indicate that it is interim or temporary. Furthermore, the judgment varies somewhat from what the transcript reflects was ordered at the hearing.
Apparently, a draft of the judgment that was ultimately signed was mailed to Rubio's counsel by Ventura's counsel on or about October 20, 1999, since a motion to set a status conference "before signing of judgment filed by petitioner" was filed by Rubio's counsel on October 29, 1999[1]. Nonetheless, the judgment, substantially as drafted by Ventura's counsel, was signed by the court.
The record reflects that Rubio appealed only the October 29, 1999 judgment. The record before us reflects that no motion or order of appeal was filed or requested regarding any order or judgment dated after October 29, 1999. Supervisory writs were not sought. Therefore, this court is limited to a consideration of issues relating to the October 29, 1999 judgment only. La. C.C.P. articles 3942, 3943.
*885 Although the briefs filed by the parties enlighten us as to what the parties may have intended, we, as a court of record, must limit our review to that which is in the record before us. The Court of Appeal is not a court of first impression and cannot review evidence that was not before the trial court. Arceneaux v. Arceneaux, 98-1178 (La.App. 4 Cir. 3/17/99), 733 So.2d 86, writ denied, 99-0518 (La.4/9/99), 740 So.2d 633, writ not considered, 99-1351 (La.6/25/99), 745 So.2d 624; Uniform Rules, Courts of Appeal, Rule 1-3. In this case, we are limited to a review of the pleadings, orders, the judgment and transcript. In doing so, we take notice of the discrepancies between the transcript and the judgment, as hereinafter discussed.
The transcript of the hearing affirmatively reflects that the court issued custody orders granting custody of the children to Ventura and granting "status quo" visitation to Rubio of every other weekend from 5 p.m. on Friday through 5 p.m. on Sunday with Rafael, Jr. and from 5 p.m. on Friday through 5 p.m. on Saturday with Ericka. The party receiving the child(ren) was made responsible for picking up the child(ren) from the other party's residence. The court also issued an order of child support payable by Rubio to Ventura of $859.14 per month based upon Ventura's monthly income of $3,095 and a "stipulated income" of $35,000 per annum for Rubio. The transcript does not reflect how those amounts were determined. By implication, the award of child support was made retroactive to June 1998, except that through the date Rubio passed the Louisiana State Bar examination the monthly child support would be but $40. Further, the court referred the parties to be evaluated by Gail Pesses[2] and ordered a preliminary injunction against Rubio enjoining him from harassing Ventura at home or work. Rubio's counsel stated for the record that he had no questions of Ventura. All of the foregoing was established solely through the testimony of Ventura. Rubio was not sworn and did not testify. The court stated at the end of the proceedings:
Judgment is (sic) prayed as to the Divorce. And Court will enter the Interim orders as recited by counsel.
The judgment went further than as reflected by the transcript for it decrees the following: (1) appoints Ms. Pesses to conduct an evaluation and orders that each party would pay his or her own share of the evaluation expense, which would be taxed as costs of court; (2) orders Rubio to sign a medical release for Ms. Pesses to obtain his medical records; (3) orders that child support be fixed at $40 per month from June 28, 1998 through October 1998 and thereafter at $859 per month noting that the amount was based upon "defendant's income being assessed at $35,000.00 yearly"; and, (4) issues a protective order against Rubio enjoining him from physically abusing or harassing Ventura at home, work or school.
To the extent that the judgment grants a divorce to the parties, it is clearly appealable. To the extent that it orders child support, determines custody and visitation, orders an evaluation and a release of medical records, and enjoins harassment, the judgment appears to have been intended to be interim, temporary and interlocutory. But, the judgment does not state or imply that it is interim (i.e., interlocutory). Moreover, our jurisprudence holds that appeals are favored in the law, *886 must be maintained whenever possible, and will not be dismissed for technicalities. See, Kirkeby-Natus Corporation v. Campbell, 250 La. 868, 199 So.2d 904 (1967) and its progeny. Thus, the judgment, as a whole, is presumptively appealable and we shall proceed accordingly[3].
First, we note that no party objects to the October 29, 1999 judgment insofar as same decrees a divorce between the parties. Accordingly, we affirm that part of the judgment.
Next, we turn our attention to the remainder of the judgment and the numerous issues raised by Rubio:
(1) The trial court erred in its limitation of visitation with Ericka to only 24 hours every two weeks;
(2) The trial court permitted Ventura's counsel to choose the evaluator, Ms. Pesses;
(3) The trial court erred in assessing his income at $35,000 per annum;
(4) The trial court failed to order the production of income or financial data of the parties;
(5) The trial court erred by ordering Rubio to sign a release of medical records so that the medical records might be presented to the evaluator, Ms. Pesses;
(6) The trial court erred in not requiring Ventura's medical records be evaluated;
(7) The trial court erred in not ordering a physician or mental health professional to evaluate the parties for purposes of custody;
(8) The trial court erred in reviewing a document without first allowing him to review it;
(9) The trial court erred in not ordering Ventura's counsel to return a document that Rubio's counsel had given him to review;
(10) The trial court erred in not giving written reasons for judgment; and,
(11) The trial court either tampered with the transcript or allowed others to tamper with the transcript.
As these involve many inter-related questions of law and fact, we will address them by category: child support (issues 3, 4); child visitation (issue 1); evaluation (issues 2, 5, 6, 7); document handling (issues 8, 9); and, other (issues 10, 11). Regarding these ancillary domestic matters, Article 105 of the Louisiana Civil Code provides:
In a proceeding for divorce or thereafter, either spouse may request a determination of custody, visitation, or support of a minor child; support for a spouse; injunctive relief; use and occupancy of the family home or use of community movable or immovables; or use of personal property.

Child Support.
Rubio maintains the trial court erred in assessing his income and in failing to order the production of financial data of the parties. In his brief, Rubio further contends that during an untranscribed conference with the court, the trial judge arbitrarily assigned him income of $35,000 per annum based upon the fact that he is an attorney-at-law newly licensed in Louisiana.
Article 141 of the Louisiana Civil Code provides:
In a proceeding for divorce or thereafter, the court may order either or both *887 of the parents to provide an interim allowance or final support for a child based on the needs of the child and the ability of the parents to provide support.
The court may award an interim allowance only when a demand for final support is pending.
The Louisiana Revised Statutes set forth guidelines for calculating the amount of child support which guidelines create a rebuttable presumption. La. R.S. 9:315.1, et seq. Furthermore, the legislature has specified that whenever a court finds it appropriate to deviate from those guidelines, it must provide specific recorded reasons to support its determination.
Louisiana Revised Statute 9:315.1 B provides:
The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
Louisiana Revised Statute 9:315.1 C(5) provides:
In determining whether to deviate from the guidelines, the court's considerations may include:
* * * * *
(5) The need for immediate and temporary support for a child when a full hearing on the issue of support is pending but cannot be timely held. In such cases, the court at the full hearing shall use the provisions of this Part and may redetermine support without the necessity of a change of circumstances being shown[4].
The legislature has even specified the supporting documentation which must be presented to the trial court in reaching such a determination.
Louisiana Revised Statute 9:315.2 A and B provide:
A. Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. Suitable documentation of current earnings shall include but not be limited to pay stubs, employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party's most recent federal tax return. A copy of the statement and documentation shall be provided to the other party.
B. If a party is voluntarily unemployed or underemployed, his or her gross income shall be determined as set forth in R.S. 9:315.9.
Louisiana Revised Statute 9:315.9 provides:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. The amount of the basic child support obligation obtained by use of this Section shall not exceed that amount which the party paying support would have owed had no determination of the other *888 party's earning income potential been made.
Documentation is essential to the setting of child support, even in the context of an interim or temporary order.
Louisiana Revised Statute 9:315.21 provides:
A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand.
B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
(2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown.
C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand.
D. Child support of any kind, except that paid pursuant to an interim child support allowance award, provided by the judgment debtor from the date of judicial demand to the date the support judgment is signed, to or on behalf of the child for whom support is ordered, shall be credited to the judgment debtor against the amount of the judgment.
E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence.
This provision prohibits the trial court from giving the obligor credit in an award of permanent child support for excessive or insufficient interim child support. The provision, by implication, requires that a record must be made by the court so that a reviewing court can determine whether the interim support decree is based upon evidence of sufficient reasonable probative value. The minimal evidence necessary is the verified[5] income statements and appropriate documentation as required by La. R.S. 9:315.2 A, or stipulations by the parties[6]. If a party fails to provide the verified income statements or if the statement reflects an inaccurate picture of an person's income, the court may then consider income potential; but if the court does so, it must articulate sufficient reasons for the record so that a reviewing court might understand the court's reasoning.
The court record before us fails to reflect upon what the assignment of $35,000 is based. The court record further fails to reflect the basis for recognizing Ventura's monthly income at $3,059. It is clear that La. R.S. 9:315.2 A, when read with La. R.S. 9:315.1 B and C(5), presumes that a court shall set interim support only when verified income statements are furnished. We need not address how the court arrived at Rubio's income for in the absence of record evidence affirmatively reflecting upon what the sum is based, the determination is arbitrary. If the trial court had determined that Rubio was underemployed, it would have been required to so state and, furthermore, to enunciate the facts relating thereto.
Accordingly, we find that the setting of interim child support of $859 per month *889 was an abuse of the court's discretion, not based upon any evidence, and must be set aside.

Visitation.
Rubio maintains that the trial court erred in limiting his visitation with Ericka to 24 hours every two weeks. We recognize the need for a child to have as much contact with both parents as possible. However, the circumstances in this case indicate that Rubio was not a regular presence in either Ericka's life or the family home. Ventura's petition alleges that Rubio and Ventura separated on April 2, 1992 and that Ericka was born on June 19, 1997. Assuming the truth of the allegations, Ericka was but a child of 26 months on the hearing date of August 31, 1999. As a matter of temporary custody and visitation with a child of such tender years and under the circumstances presented, this court cannot say that the trial court abused its discretion in setting the temporary visitation as it did.
Accordingly, we affirm the trial court's order regarding visitation, but only insofar as it is temporary.

Evaluation.
Rubio maintains that the trial court erred by allowing Ventura's counsel to choose the evaluator, by ordering Rubio to sign a release of medical records, by not requiring Ventura's medical records to be evaluated, and by not ordering a physician or mental health evaluation of both parties.
The record does not support Rubio's contention that Gail Pesses was chosen by Ventura's counsel to evaluate the parties. We infer that Ms. Pesses was suggested by someone during the parties' untranscribed conference with the court. A court has discretion to appoint any expert to assist it. La. C.C.P. articles 191, 373; La. C.E. art. 706A. Moreover, the appointment does not preclude Rubio from seeking further evaluations by a physician and/or mental health professional of his own choosing. La. C.E. art. 706C. The appointment by the court of an evaluator does not carry with it the presumption that the court will agree with the evaluator's recommendations because the recommendations are subject to cross-examination at the trial of the custody issue. Similarly, we find no abuse of discretion by the court in ordering that the parties split the costs of the evaluator with the ultimate assessment to be taxed as costs. The court in taxing costs is not required to tax them all to the same party but may divide them between the parties. La. C.C.P. art.1920.
The medical records of a party to a custody matter are relevant to the issue of custody. However, the court at the August 31, 1999, hearing failed to direct that medical records be provided to the court appointed evaluator, Ms. Pesses. It is apparent that the language was added by Ventura's counsel without authorization from Rubio or his counsel. That the court signed the judgment addressing the point is of no moment. It was entered without a hearing or even a discussion of the issue. After giving each party an opportunity to be heard regarding the need, if any, for the medical records of either or both parties, the trial court may proceed to enter such an order.
Accordingly, we affirm the appointment by the court of Ms. Pesses as an evaluator, but find that the order requiring the disclosure of Rubio's medical records is invalid and the judgment must be vacated in that regard.

Document Handling.
Rubio maintains that the trial court erred in reviewing a document without first allowing him to review it, and in not ordering Ventura's counsel to return a *890 document that Rubio's counsel had given him to review.
We know of no law or jurisprudence requiring that a party or his counsel must be given an opportunity to review a judgment before its presentation to the court. Indeed, it historically was the responsibility of the court to prepare and issue its own judgments. However, in recent times, the practice has evolved into counsel preparing the judgment and submitting it to the court for signature. Professionalism and courtesy require that prior to presenting a proposed judgment to the court for signature, the presenting party or counsel must allow the opposing party or counsel a reasonable opportunity to review it and comment thereon. A trial court does not err in assuming the parties have honored these expectations. Although the proposed judgment was presented to opposing counsel several days before being presented to the judge, the judge obviously signed it before he became aware of Rubio's desire to be heard on the wording of the judgment. Our Code of Civil Procedure anticipates such events and provides Rubio the right to seek a new trial within seven days from the issuance by the court of a notice of judgment. La. C.C.P. art.1974. However, Rubio's filing of the motion to appeal mooted the necessity of the court's issuing a notice of judgment and precluded Rubio from requesting a new trial. La. C.C.P. art.2087. Thus, this issue is moot.
Ordinarily, a document that a party intends to show to the trial judge should be presented to opposing counsel or opposing party for review before being presented to the court. Furthermore, any document provided by one party to another should be promptly and courteously returned. Fortunately, we need not directly address whether the trial court erred in failing to demand that the parties conduct themselves in this manner. Since all the questioned behavior was relative to documents regarding child support and, in light of our determination that the support order is invalid, this issue is likewise moot.

Other Issues.
Rubio maintains that the trial court erred in failing to provide written reasons for judgment. Although a party has a right to request written reasons for judgment within ten days of the signing of a judgment[7], the record before us fails to disclose that Rubio ever filed a request for written reasons. This issue is without merit.
Rubio also maintains that the trial court erred by tampering with or allowing others to tamper with the trial transcript. Rubio produces no evidence to this court to substantiate, by inference or otherwise, that such occurred. In the absence of evidence of tampering, we have nothing to review and find the claim to be without merit.

Interim, Temporary and Permanent Domestic Orders.
The case at bar is an example of a recurrent problem that this court has observed respecting interim and temporary orders issued in domestic relations matters. The trial courts in domestic matters are issuing judgments intended as interim or temporary orders, only to be effective until a trial on the merits, but without specifically designating in the judgment that the orders are, in fact, interim or temporary only and without setting a date for a trial from which permanent orders would emanate. Additionally, orders intended as interim or temporary are issued without an explanation as to what, if anything, they are based upon. In the absence *891 of a record indicating the facts forming the basis of an interim or temporary order, no reviewing court can conduct a proper review as to whether the trial court has abused its discretion in entering the orders. The result is that interim and temporary orders effectively operate, because of delay, as permanent orders, thereby denying the parties a timely and appropriate adjudication of the issues.
We do not believe that this result was intended by our legislature. It is the opinion of this court that the legislature intended to expedite and facilitate the movement of all domestic matters through the court system. The following pertinent statements by the legislature consistently anticipate and demand that the courts proceed with as much expediency as possible in domestic relations matters.
Article 113 of the Louisiana Civil Code provides:
Upon motion of a party or when a demand for final support is pending, the court may award a party an interim periodic allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage. The obligation to pay interim periodic support shall not extend beyond one hundred eighty days from the rendition of judgment of divorce, except for good cause shown. (Emphasis added.)
Article 141 of the Louisiana Civil Code provides:
In a proceeding for divorce or thereafter, the court may order either or both of the parents to provide an interim allowance or final support for a child based on the needs of the child and the ability of the parents to provide support.
The court may award an interim allowance only when a demand for final support is pending. (Emphasis added.)
Article 3945 of the Louisiana Code of Civil Procedure provides:
C. An ex parte order of temporary custody shall:
(1) Expire by operation of law within fifteen days of signing of the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding ten days.
* * * * *
D. The rule to show cause why the respondent should not be awarded the custody, joint custody, or visitation of the child shall be assigned for hearing not more than fifteen days after signing of the ex parte order of temporary custody.
E. Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is null and void. (Emphasis added.)
Article 3943 of the Louisiana Code of Civil Procedure provides:
An appeal from a judgment awarding custody, visitation, or support of a person can be taken only within the delay [of 30 days] provided in Article 3942.[8] Such an appeal shall not suspend execution of the judgment insofar as the judgment relates to custody, visitation, or support. (Emphasis added.)
Louisiana Revised Statute 9:315.1 provides, in part:
C. In determining whether to deviate from the (child support) guidelines, the court's considerations may include:

*892 * * * * *
(5) The need for immediate and temporary support for a child when a full hearing on the issue of support is pending but cannot be timely held. In such cases, the court at the full hearing shall use the provisions of this Part and may redetermine support without the necessity of a change of circumstances being shown. (Parenthetical and emphasis added.)
We understand the legislature to intend that matters of child support, custody and visitation should be handled within a finite period of time. The Supreme Court of Louisiana has stated that "[s]trong reason supports the policy of expediting appeals in alimony and custody matters." Malone v. Malone, 282 So.2d 119, 121 (La.1973); Rosenbloom v. Bauchat, 94-2346, p. 4 (La. App. 4 Cir.1995) 654 So.2d 873, 875. It stands to reason that if appeals should be expedited, so should the trials of those issues. Even interim and temporary orders in domestic matters should be substantiated with as complete a foundational record as possible.
We find that the intent of our legislature is the cautious, thorough, and expeditious handling of all decisions, at both the trial and appellate levels, regarding matters of alimony (both spousal and child), as well as custody and visitation. Undeniably, the best interests of children and families are served by so acting.
Therefore, in order to expedite and facilitate the prompt disposition of domestic relations matters, we mandate that the trial courts shall do the following when entering interim and temporary orders in domestic relations matters.
First, the trial court shall have a court reporter present during discussions leading up to the interim or temporary order. If a court reporter is unavailable, a recording capable of transcription shall be made of the discussions by the judge. If recording equipment is unavailable, the judge shall specify the factual information upon which each part of the interim or temporary order is based in sufficient detail that a reviewing court may ascertain the nature and extent of the information relied upon. If the court has relied upon the representation of a party, the record must reflect what information the party offered in support of the representation. In issues of support, the information shall include verified income statements and supporting documentation or stipulations made of record in open court. An opposing party may state his or her specific objection to an order and the reasons therefor. The information must likewise be made a part of the trial court's record.
Second, at the time of the ruling issuing the interim or temporary order, as distinguished from the date that a written order or judgment is signed by the court commemorating the interim or temporary order, the court shall set a date for the merits trial of the final orders. The written order or judgment shall state the date of the merits trial of the final orders. The date shall not be more than 120 calendar days from the date of service of the pleadings directed to the issues of support and custody.[9] Continuance of the date of the trial of the final orders may only be granted for a peremptory ground in La. C.C.P. art. 1602, by the joint motion of the parties in writing, or in open court with all parties present.
*893 Third, the trial court may not circumvent the trial of the final orders by the entry of one or more new interim or temporary orders or by the modification of the original interim order.
Accordingly, we affirm the judgment of the trial court insofar as it grants the parties a divorce a viniculo matrimonii and enjoins Rubio from harassing Ventura. We reverse the judgment insofar as it awards child support on any basis. We affirm the judgment insofar as it determines custody and determines visitation, but amend the judgment to state that the orders relative to custody and visitation are temporary only. We affirm the judgment insofar as it determines that the parties are to evenly share the cost of the evaluation and that the costs of the evaluation are to be taxed as court costs. We affirm that part of the judgment insofar as it appoints Gail Pesses to perform the custody evaluations, but reverse the judgment insofar as it orders Rubio to provide his medical records. We further order that the trial of the permanent matters originally scheduled to be heard on August 26, 1998 be set not later than 90 calendar days from the date of this decision[10], and that, if necessary, interim and temporary orders may issue as warranted under the circumstances but not in contravention of this decision.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; REMANDED IN PART WITH ORDERS.
NOTES
[1] An order setting a status conference, as requested by Rubio, was entered on January 27, 2000 setting the conference for February 23, 2000. On December 28, 1999, Ventura's attorney filed a rule for contempt for nonpayment of child support, for sole custody and to restrict Rubio's visitation with the children. It appears that a hearing was held on February 23, 2000 for, although no judgment appears of record, an order of incarceration of Rubio for 30 days was signed.
[2] Although the record fails to reflect Ms. Pesses's qualifications to be an evaluator, we know her to be a social worker. In re Sevin, 97-1145, (La.App. 5 Cir. 5/13/98) 712 So.2d 998.
[3] In no way should our disposition of this matter be interpreted as providing an avenue for appellate review of interim or temporary orders in domestic relations matters. Such matters are reviewable on supervisory writ unless a statute specifically makes them appeable.
[4] La. C.C. art. 141 together with La. R.S. 9:315.1 C(5) constitute the statutory authority for the award of interim child support.
[5] "Verified" means sworn to and subscribed before a notary public or officer permitted to administer oaths.
[6] We see no prohibition to a court modifying an interim support order provided the modification is based upon evidence.
[7] See, La. C.C.P. art.1917.
[8] Article 3942 of the Louisiana Code of Civil Procedure provides a delay of 30 days after either the expiration of the delay for applying for a new trial (or judgment notwithstanding the verdict) or the date notice is mailed of the court's refusal to grant same. This is a shorter period of time than that which would otherwise be allowed under La. C.C.P. art.2087.
[9] This is consistent with our Supreme Court Rules, Part G, Section 6, regarding time standards for domestic relations matters pending in the Louisiana district courts: "Domestic relations matters should be settled, tried or otherwise concluded within 4 months of the date of case filing, except for individual cases in which the Court determines exceptional circumstances exist and for which a continuing review should occur."
[10] We are aware that requiring that permanent orders issue in this case within 90 days varies from our ruling herein that such matters must be heard within 120 days. We have shortened the delay for these parties as they have been waiting years for a resolution of their dispute.