However, when the trial court commits a legal error, de novo review is required. Evans v. Lungrin , 97-0541, p. 6-7 (La. 2/6/98), 708 So.2d 731, 735. "When *508 such a prejudicial error of law skews the trial court's finding of a material issue and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo ." Id. , 97-0541, p. 7, 708 So.2d at 735 (citation omitted).
Mr. Prevost asserts that the trial court abused its discretion in finding that his actions rose to the level of abuse warranting a change in custody; that the trial court committed legal error when it granted Ms. Laurent custody of the minor children in contravention to Bergeron ; and that the trial court committed legal error when it appointed an attorney to represent the minor children in contravention of the law.
BERGERON STANDARD
Since the second assigned error concerns the burden of proof relating to the modification of a contested custody judgment, we address this assigned error first. Mr. Prevost contends that the June 2015 judgment was a considered decree and therefore could not be modified unless the heavy burden imposed in Bergeron was met. The Louisiana Supreme Court stated:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
Bergeron , 492 So.2d at 1200.
Counsel for the minor children submits that the June 2015 judgment is not subject to the heightened requirements of Bergeron because the judgment is not a considered decree. Counsel argues that the record is silent as to whether any evidence was provided relative to parental fitness and relies on a judgment drafted by Mr. Prevost's counsel and the handwritten note from the trial court thereon, which counsel claims demonstrates that the parties had a stipulated agreement. Although we find this argument meritless[3] , our analysis does not extend that far because the June 2015 judgment was not a decree of permanent custody.
The June 2015 judgment is not subject to Bergeron standards because it was an interim custody plan, and Bergeron only applies to a "considered decree of permanent custody." Id. Therefore, the burden of proof in this case requires that the party seeking a change in the custody arrangement prove: "1) a change in circumstances affecting the welfare of the [child] had occurred since the original decree; and 2) the proposed modification is in the best interests of the [child]." Cerwonka v. Baker , 06-856, p. 6 (La. App. 3 Cir. 11/2/06), 942 So.2d 747, 752 (quoting Aucoin v. Aucoin , 02-0756, p. 5 (La. App. 3 Cir. 12/30/02), 834 So.2d 1245 ).
MODIFICATION HEARING
At the December 2016 hearing, the trial court heard testimony from each party, numerous witnesses, and the minor children via in camera court interviews.
*509 Mr. Prevost testified that he never punched, hit, or grabbed the children or threatened them with physical violence. He was asked whether he had ever caused any of the minor children to kneel on concrete for extended periods of time. He testified that the longest period of time that he ever made the children kneel was 30 minutes. Mr. Prevost explained that he made the children kneel as a form of discipline and as an alternative to spanking. He stated that he found kneeling to be more effective than spanking. Mr. Prevost testified that over the course of the two years that he had primary custody, the minor children were made to kneel about 15 times.
At the time Mr. Prevost became the de facto domiciliary parent and gained primary physical custody of the children, the evidence shows that the children were exhibiting behavioral problems at school and that the youngest child, B.P., brought marijuana to school that he retrieved from Ms. Laurent's kitchen table. Mr. Prevost produced a number of witnesses at trial, including several teachers and administrators from the minor children's school, who provided the following testimony regarding their interactions and observations of the Prevost children.
Linda Dennis, Mr. Prevost's hired nanny for the minor children, testified that she would watch the children five days a week, Saturday through Wednesday. During her employment, she testified that she never observed Mr. Prevost hit, punch, choke, or drag the children, and she never observed any bruising on the children. Ms. Dennis was also questioned about the type of discipline Mr. Prevost implemented. She stated that Mr. Prevost would always talk to the minor children, and that she had witnessed Mr. Prevost making the children kneel. She testified that "[i]f they did something that they had no business doing, then he would make them get down on their knees." Ms. Dennis testified that on one occasion, after Mr. Prevost had the minor children kneel, she told the boys they could stop after 20 minutes. At trial, she stated that she never saw Mr. Prevost spank the children and that she would rather the boys kneel as a form of discipline than for them to be spanked with a belt.
Kermit Smith, the coach at the minor children's school, testified that he taught all of the minor children during the 2015/2016 and 2016/2017 school years and that he never witnessed any bruising on their bodies when they attended his class in their physical education uniforms. Their physical education teacher Toby Garner also testified that he never saw bruising on the children, nor had the children expressed to him any allegations of abuse. Fourth grade teacher Stacy Clayton taught three of the four children, as did teacher Trynitha Fulton, who both testified to observing no bruising on the children. Ms. Clayton stated that the children did not express concerns about being physically abused, nor did she witness either parent being violent with them.
Jennifer Kagan, the school counselor, also testified that she did not observe any bruising on the children. She indicated that in the past two years, since the children had been in their father's care, she noticed the children's behavior and grades improved. Ms. Kagan classified Mr. Prevost as a "very involved" parent and that she never saw signs of fear or apprehension by the minor children when spending time with their father. Based on her experience and background, Ms. Kagan testified that children who are physically abused are typically "very withdrawn" or aggressive. Children who are physically abused, she stated, are fearful to go home, back away from friends, and their grades drop. While it is possible that an abused *510 child's grades may improve out of fear, Ms. Kagan testified that such a situation does not occur often. Ms. Kagan also testified that based on her interactions with the minor children, she believed J.P. would have revealed to her if he was being physically abused. She further stated that she would not attribute the improvement of the minor children's grades to abuse.
Dean of Students Justin Legett testified that when the minor children were younger they would act out, but that while the children were living with Mr. Prevost, he noticed improvement in the children's behavior. Mr. Legett indicated that in the past when he had to call Mr. Prevost to come to the school because one of the children was acting out, he never witnessed Mr. Prevost acting violently or aggressively with the children. Mr. Legett testified that he is "pretty close" with all four of the minor children and that if either parent was physically abusive, he believed they would have told him. Mr. Legett stated that "if they are having a bad day, they'll just come and talk to me." He testified to having never seen any bruising or injuries. He stated that the children never expressed concern about the discipline they received at home with Mr. Prevost or indicated they were fearful of their father, or fearful for him to be called to the school.
Stephanie Anderson, the school's social worker, testified at trial. She stated that she holds a Bachelor's Degree in Psychology and a Master's Degree in Social Work. She testified that since the children began to live with Mr. Prevost, the children's classroom behavior had improved, and they were not pulled out of the classroom as much. She stated that while in Mr. Prevost's care, the children were more disciplined, "more relaxed then [sic] when they're with mom."
Ms. Anderson testified that she receives annual training in handling situations of physical abuse of a child. She indicated that she had not seen any bruising on any of the Prevost children, noting that she would have noticed signs of physical abuse because the minor children have "very light" complexions. Ms. Anderson testified that she would be surprised if she learned that the children were abused because she saw no visible or emotional signs of abuse. She stated that the children were very friendly and very well-mannered, and she believed that the children would have told her and the school counselor Ms. Kagan first, if they thought they were in danger. She testified that B.P. told her everything regarding the incident when he brought marijuana to school. She indicated that Y.P. and B.P. would "for sure" disclose to her if they were abused. She further indicated that J.P. and A.P. would likely tell Ms. Kagan if they were being abused because they were close with her.
At trial, counsel for the minor children presented the testimony of Ms. Laurent and the in camera interviews of the minor children. Ms. Laurent was asked whether during the time the minor children were living with Mr. Prevost if she ever saw injuries suffered by the children. She testified that a couple of times when she was exercising visitation, she "would catch a bruise or I'd see something on them." She clarified that more often she would become aware of incidents that caused bruising when she would visit the children at school. She "didn't always physically see the bruising...because [the minor children] didn't feel comfortable disclosing that kind of stuff in front of the teachers." Ms. Laurent testified she saw injuries on the children three or four times a month. She testified that she spoke with the school principal and called DCFS regarding the injuries she observed. However, the principal did not testify at trial and *511 evidence of a DCFS report mentioning any of the injuries or incidents Ms. Laurent testified to reporting was also not presented at trial.
Other than reporting this information to DCFS and the school principal, Ms. Laurent testified that she never addressed her concerns or the injuries she saw with Mr. Prevost. She further stated that she had brief conversations with two or three "other teachers" but she never went into detail because she did not trust "all those people at the school." Ms. Laurent was also asked if she ever sought medical attention for the minor children as a result of the bruising she saw. She responded in the negative. Ms. Laurent testified that her children expressed a fear of her disclosing the allegations of abuse "almost constantly." No evidence or testimony was presented regarding Mr. Laurent's home conditions since the children were removed in 2015.
The paramount consideration in any child custody determination is the best interest of the child. La. C.C. art. 131. As the moving party, appointed counsel on behalf of the minor children had the burden to show there was a change in circumstances affecting the welfare of the Prevost children and that a modification was in the best interest of the children. After appointed counsel met with the minor children, counsel filed a pleading with the trial court seeking modification of custody plan that made allegations of abuse. In its oral reasons, the trial court based its decision to modify custody upon a finding that Mr. Prevost's use of kneeling as a form of discipline was abusive.
The record reflects that when the children were removed from Ms. Laurent's home, the minor children were exhibiting behavioral issues at school. The behavioral issues precipitated the children's removal from the classroom and the police and DCFS to become involved. The minor children were originally moved from Ms. Laurent's physical custody after her parental fitness was questioned as a result of one of the minor children bringing marijuana to school that he retrieved from Ms. Laurent's kitchen table. Upon Mr. Prevost obtaining primary custody, the school witnessed marked improvement in all four children's behavior and grades, which they attributed to the structure and discipline Mr. Prevost provided. The trial court found the children's behavior and grades improved since living with their father.
The record also reflects that the minor children expressed to the trial judge a desire to reside with Ms. Laurent full-time. The trial court reasoned that this desire is likely based on the fact that it is the household in which they are "the freest." However, the trial court noted that this consideration is "not always what is best for the children."
Pursuant to La. C.C. art. 228, "[a] child shall obey his parents in all matters not contrary to law or good morals. Parents have the right and obligation to correct and discipline the child in a reasonable manner." The trial court recognized that Mr. Prevost was exercising his right to correct and discipline his children. Additionally, the trial court "believe[d] that there ha[d] been a positive effect" and that "it would be a disservice to the children if they did not have contact with their father." Nevertheless, the trial court reasoned that the frequency of the kneeling was greater than Mr. Prevost testified to, but not as frequent as the children stated. The trial court ultimately found the repeated use of kneeling, as a form of discipline, abusive.
After review of the record and the transcripts of the Watermeier hearing, we find the trial judge was presented with two permissible views concerning whether Mr. *512 Prevost's use of kneeling as a form of discipline was abusive to the extent it was affecting the welfare of the children so as to require a modification of custody. As it relates to the issue of kneeling, we cannot say the trial court's findings were manifestly erroneous. Melerine v. O'Connor , 13-1073, p. 3-4 (La. App. 4 Cir. 2/26/14), 135 So.3d 1198, 1202 (citing Stobart v. State, Dept. of Transp. and Development , 617 So.2d 880, 882-83 (La.1993). However, we find the trial court's ordering Mr. Prevost to obtain, at his expense, the services of an outside supervisor in order to exercise visitation with his children to be an abuse of discretion. We find it is in the best interests of the children that Mr. Prevost be able to visit with his children as soon as possible under the supervision of a family member.
APPOINTMENT OF COUNSEL
Finally, Mr. Prevost contends the trial court committed legal error in its appointment of an attorney for the minor children. He claims that the appointment was made in contravention to La. R.S. 9:345 because the trial court failed to hold a contradictory hearing on the issue and take into account the parties' ability to pay for the representation. The appointment of counsel was made on the court's own motion concurrently with a contradictory hearing. The trial court cited as its basis for the appointment its concern regarding the delayed custody evaluation and Ms. Laurent's implications of abuse toward the minor children. Each party had an opportunity to testify or present argument relative to the appointment. However, neither party objected to the appointment at the hearing or at any subsequent time during the proceedings in this case. Moreover, the record shows the trial court discussed the various steps it took to secure counsel for as little cost as possible for the parties. Therefore, we find no merit to this assignment of error.
DECREE
We find the trial court was presented with two permissible views of the evidence concerning the use of kneeling as a form of discipline. Based on the record before us, we cannot say the trial court's findings were manifestly erroneous. We also find the trial court complied with La. R.S. 9:345 in its appointment of counsel for the minor children. Therefore, we affirm the portion of trial court's judgment that awarded temporary sole custody of the minor children to Ms. Laurent. However, the trial court abused its discretion in ordering Mr. Prevost to obtain the services of an outside supervisor, at his expense, in order to exercise visitation with his children. We find visitation supervised by a family member to be in the best interests of the children.
The matter is remanded to the trial court to conduct a status hearing within 30 days to address the following: 1) the custody evaluation; and 2) Mr. Prevost's supervised visitation with the minor children. Accordingly, we affirm as amended and remand with instructions.
AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS
LEDET, J., CONCURRING IN PART WITH REASONS
JENKINS, J., CONCURS IN PART, DISSENTS IN PART
ATKINS, J., CONCURS IN PART FOR REASONS ASSIGNED BY JUDGE LEDET
LEDET, J., CONCURRING IN PART WITH REASONS
The narrow custody issue before the trial court on September 12, 2017, was whether Ms. Laurent should continue to *513 have temporary, physical custody of the children, which she obtained ex parte pursuant to La. C.C.P. art. 3945. I concur in the majority's decision affirming the trial court's judgment ordering a change in custody to Ms. Laurent and awarding supervised visitation to Mr. Prevost. The trial court's judgment was based on its factual finding that Mr. Prevost abused the minor children; the trial court's factual finding is supported by the record on appeal.[1] In all other respects, I agree with the majority's decision.
Accordingly, I respectfully concur in part.
JENKINS, J., CONCURS IN PART, DISSENTS IN PART
I concur with the majority's finding that the trial court committed no legal error in appointing an attorney for the minor children pursuant to La. R.S. 9:345.
I concur for the reasons assigned by Judge Ledet with respect to the trial court's factual finding that Mr. Prevost abused his minor children.
I dissent from the majority's decision to affirm the trial court's order granting Mr. Prevost "liberal supervised visitation with the minor children at least every other weekend until such time as he demonstrates satisfactory completion of a parenting class where he is to learn techniques of discipline."
La. R.S. 9:341 governs restrictions on visitation in child custody matters:
A. Whenever the court finds by a preponderance of the evidence that a parent has subjected his or her child to physical abuse, or sexual abuse or exploitation, or has permitted such abuse or exploitation of the child, the court shall prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child . Should visitation be allowed, the court shall order such restrictions, conditions, and safeguards necessary to minimize any risk of harm to the child. All costs incurred in compliance with the provisions of this Section shall be borne by the abusive parent. (Emphasis in original.)
The trial court, after hearing testimony and reviewing the evidence introduced at the September 12, 2017 hearing on the Motion for Modification of Physical Custody (and other matters), made the following factual findings regarding Mr. Prevost's physical abuse of the minor children:
THE COURT: And while much of their [the children's] testimony is very similar, the amount of detail that they were able to provide to me, and the things that actually differ, cause me to believe that they have actually been subject to what The Court would consider to be abusive behavior by Mr. Prevost.
The Court continued its discussion of Mr. Prevost's repeated acts of physical abuse:
THE COURT: Now let me tell you what for me is turning, turns the tide in this particular case. And that is indeed the punishment of kneeling on the concrete *514 outside of the home over a two year period of time over approximately 15 times with an average time of 30 minutes each time. That is abusive. It is abusive to require a child to kneel on concrete for 30 minutes. And while I don't believe it has happened as often as the children have indicated, I do believe it has happened more than what Mr. Prevost has indicated.
And it is for this reason that I am indeed granting custody of the minor children to Ms. Laurent, subject to the liberal, supervised visitation of Mr. Prevost until he is able to demonstrate that he has taken a parenting class wherein he is to learn techniques of discipline.
Based on the trial court's factual findings regarding Mr. Prevost's history of physical abuse of his minor children, I find that the trial court committed legal error in granting Mr. Prevost liberal supervised visitation. I find nothing in the record that would satisfy Mr. Prevost's burden of proving under La. R.S. 9:341 that visitation would not cause physical, emotional or psychological damage to the children. Because the trial court did not have authority to order visitation, I would vacate that portion of the trial court's judgment granting liberal visitation to Mr. Prevost.
Finally, I dissent from the majority's decision to classify the trial court's judgment as awarding Ms. Laurent temporary custody of the minor children. Although the majority refers to the trial court's award of "temporary sole custody" to Ms. Laurent, nowhere in the December 12, 2017 judgment does the trial court state that its custody determination is "temporary" or "interim." Instead, the judgment states that "the minor children's 'Motion for Modification of Physical Custody' is hereby GRANTED," that "Kristen Laurent shall be the sole legal custodian of the minor children," and that "Ivan Prevost shall be granted liberal supervised visitation."
The confusion as to whether the December 12, 2017 judgment is a temporary or a permanent custody and visitation decree appears to have arisen when the appointed attorney for the minor children filed an "ex parte " motion for "modification of physical custody" in August 2017. In the motion, counsel for the children erroneously stated that the trial court had rendered a "considered decree" on June 1, 2015, which had established "joint legal custody" of the minor children.[1] The June 1, 2015 judgment, however, which was rendered following a hearing on a petition for protection from abuse, was not a "considered decree." The judgment stated as follows:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, on an interim basis, the parties are granted Joint Custody of their minor children in common. Ms. Laurent is granted, on an interim basis, a 'liberal' visitation schedule.... (Emphasis added.)
In this same ex parte motion, the attorney for the children compounded the confusion by also referring to a January 19, 2016 judgment as a "considered decree" establishing a physical custody schedule. Again, the January 19, 2016 judgment was not a "considered decree." It set an interim holiday visitation schedule between Christmas 2015 and Easter 2016, and ordered the parties to submit to a custody evaluation.
In Ventura v. Rubio , 00-0682 (La. App. 4 Cir. 3/16/01), 785 So.2d 880, this Court discussed the problem of trial courts issuing *515 judgments meant to rule on issues of interim or temporary custody but issuing judgments that appear to resolve permanent custody issues. This Court stated, in pertinent part, as follows:
The case at bar is an example of a recurrent problem that this court has observed respecting interim and temporary orders issued in domestic relations matters. The trial courts in domestic matters are issuing judgments intended as interim or temporary orders, only to be effective until a trial on the merits, but without specifically designating in the judgment that the orders are, in fact, interim or temporary only and without setting a date for a trial from which permanent orders would emanate. Additionally, orders intended as interim or temporary are issued without an explanation as to what, if anything, they are based upon. In the absence of a record indicating the facts forming the basis of an interim or temporary order, no reviewing court can conduct a proper review as to whether the trial court has abused its discretion in entering the orders. The result is that interim and temporary orders effectively operate, because of delay, as permanent orders, thereby denying the parties a timely and appropriate adjudication of the issues....
Ventura , 00-0682, p. 14, 785 So.2d at 890-91.
Thus, in order to expedite and facilitate prompt disposition of domestic relations matters, the Ventura decision requires trial courts to do the following when entering interim and temporary orders in domestic matters:
(1) have a court reporter present during discussions leading up to the order, and if the court reporter is unavailable, a recording capable of transcription shall be made of discussions by the judge, and if recording equipment is unavailable, the judge shall specify factual information upon which each part of the order is based in sufficient detail that a reviewing court may ascertain the nature and extent of information relied upon;
(2) at the time of the ruling issuing the interim or temporary order, the court shall set a date for the merits trial of final order, and the date shall not be more than 120 calendar days from date of service of pleadings directed to issues of support and custody; and
(3) the trial court may not circumvent trial of the final orders by entry of one or more new interim or temporary orders or by modification of original interim order.
Id. , 00-0682, pp. 17-18, 785 So.2d at 892-93.
In Ventura , the Court found that the transcript of the hearing clearly indicated that all orders were to be interim or temporary, but that the judgment varied from that, and there was no clear indication that the custody and visitation orders were interim or temporary pending a full trial on those issues. The Court, therefore, amended that part of the judgment "to state that the orders relative to custody and visitation [were] temporary only." The Ventura Court further ordered that the trial of the "permanent matters" be set "not later than 90 calendar days from the date of [the] decision, and that, if necessary, interim and temporary orders may issue as warranted under the circumstances...." Id. , 00-0682, p. 18, 785 So.2d at 893.
Here, as in Ventura , there is no clear indication that the custody and visitation orders in the December 12, 2017 judgment are interim or temporary, pending a full trial on those issues. I, therefore, dissent from the majority's conclusion that this is a temporary custody order. I would follow *516 Ventura and amend the judgment to state that "the orders relative to custody and visitation are temporary only." As in Ventura , I would also amend the judgment to order that "the trial of the permanent matters be set not later than 90 calendar days from the date of this decision," and further state that, "if necessary, interim and temporary orders may issue as warranted under the circumstances but not in contradiction of this decision."
ATKINS, J., CONCURS IN PART FOR THE REASONS ASSIGNED BY JUDGE LEDET

The judgment drafted by counsel for Mr. Prevost was rendered moot on June 2, 2015. The trial court prepared its own written judgment, signed on June 1, 2015, which indicated its judgment was rendered after consideration of the evidence, testimony, pleadings, and the law presented at the May 11, 2015 hearing. A plain reading of the June 1, 2015 judgment reflects that it was not issued pursuant to a stipulated agreement.

The record on appeal includes the transcripts of the Watermeier hearings with the four minor children, which the trial court judge conducted at the children's school. See Watermeier v. Watermeier , 462 So.2d 1272 (La. App. 5th Cir. 1985). The trial court judge, at the close of the September 12, 2017 hearing, expressly stated that the children's testimony caused her "to believe that they have actually been subject to what [t]he Court would consider to be abusive behavior by Mr. Prevost."

A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Rodriguez v. Wyatt , 11-82, p. 9 (La. App. 5 Cir. 12/12/11), 102 So.3d 109, 114.