848 So.2d 740 (2003)
The BOARD OF DIRECTORS OF the INDUSTRIAL DEVELOPMENT BOARD OF the CITY OF NEW ORLEANS, Louisiana, Inc.
v.
ALL TAXPAYERS, PROPERTY OWNERS, CITIZENS OF the CITY OF NEW ORLEANS and Non-Residents Owning Property or Subject to Taxation Therein, and All Other Persons, et al.
No. 2003-CA-0826.
Court of Appeal of Louisiana, Fourth Circuit.
May 29, 2003.
*742 Albert A. Thibodeaux, Chief Deputy City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, and Wayne J. Neveu, Harold B. Judell, Meredith L. Hathorn, Foley & Judell, L.L.P., New Orleans, LA, and David E. Henderson, Foley & Judell, L.L.P., Baton Rouge, LA, for Plaintiff/Appellee.
Cameron C. Gamble, Cameron C. Gamble, A PLC, and Camille J. Strachan, and Michael A. Duplantier, New Orleans, LA, for Defendants/Appellants.
(Court Composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS, JR., and Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
This case arises from the contested issuance of bonds worth some $28 million to finance the construction of a retail and commercial development facility, specifically a Wal Mart Super Center for Wal Mart Stores, Inc. ("Wal Mart"), to be located within the city limits of New Orleans. On 6 March 2003, the Board of Directors of the Industrial Development Board of the City of New Orleans, Louisiana, Inc. ("IDB") filed a motion for judgment, seeking judicial declaration of the validity and legality of a development project and the bonds issued to finance the project pursuant to the Bond Validity Act, La. R.S. 51:1151, et seq. The appellants, as representatives of all taxpayers, property owners, citizens of the city of New Orleans and non-residents owning property or subject to taxation in New Orleans, and all other *743 persons in or affected in any way by the issuance of not more than $28 million in industrial revenue bonds of the Industrial Development Board of the City of New Orleans, Louisiana, Inc. (hereinafter "appellants"), filed an answer and reconventional demand in response to the IDB's motion for judgment, and further asserted a third party demand against the State Bond Commission.
Following a hearing on the motion for judgment, the trial court granted the motion and declared that the bonds, the proceedings held, and the actions of the IDB were valid and binding on the appellants. The appellants have appealed the judgment of the trial court granting the plaintiff's motion for validation of bonds. This appeal comes before the court on an expedited basis pursuant to La. R.S. 13:5128.
The bonds will be secured by the revenues generated under a lease agreement between the IDB and the Riverview Retail Development Company, L.L.C. ("Riverview"). Under the terms of the lease agreement, in lieu of ad valorem taxes, the lessee, Riverview, will pay annually a total $25,000.00 directly to the persons or entities that would have collected taxes. The lessee may assign the lease and it is apparent that Riverview will assign the lease to Wal Mart. The resolution authorizing these bonds was approved by the IDB on 18 December 2002.
The following facts were established in the trial court. The IDB, a political subdivision and a nonprofit corporation as well as "governmental unit" pursuant to La. R.S. 13:5121(2), was created by the City Council for the city of New Orleans on 4 January 1973. On 17 October 2000, the IDB adopted the Preliminary Authorization Resolution, which approved a retail and commercial development facility to be located in the city of New Orleans (hereinafter "the Project") and granted preliminary authorization for the issuance of the bonds to provide a portion of the moneys necessary to finance the acquisition, construction, and installation of the Project.
On 16 August 2001, the State Bond Commission granted preliminary approval for the issuance of the bonds, and on 22 July 2002, adopted a resolution increasing preliminary authorization for the IDB to issue the bonds in an aggregate principal amount not exceeding $28 million.
The IDB filed suit to validate the bonds pursuant to La. R.S. 13:5121, et seq. On 3 March 2003, the appellants filed various discovery requests; thereafter they filed an answer, reconventional demand, and a third-party demand against the State Bond Commission. After the IDB filed what the appellants deemed to be incomplete discovery responses, the appellants filed a motion to compel and subpoena duces tecum; the motion was denied and the subpoena was quashed by the trial court. The trial court also denied the appellants' request to continue the hearing on the motion to validate the bonds until the State Bond Commission could answer. The trial court then severed the third-party demand and proceeded to trial on the main and reconventional demands.
The appellants filed an application for a supervisory writ with this court from the decisions relating to discovery; this court stayed the hearing below and issued an opinion on 4 April 2003, which denied relief. The trial court rendered judgment and reasons in favor of the IDB on 15 April 2003 stating:
This Court finds that the Industrial Development Board acted properly and within the course and scope in issuing the bonds for the Riverview Retail Development Co., L.L.C. Project. This Court therefore finds no evidence of substantial defects, material errors and *744 omissions in the incidents of the bond issue. [Footnote omitted.]
The appellants have taken an expedited appeal from that decision.
On 20 May 2003, the appellants filed a motion to remand this case on the grounds of newly discovered evidence, for the purpose of reopening the trial, and allowing the discovery and introduction of additional evidence in the trial court. This "newly discovered evidence" consists of documents which purportedly demonstrate that one of the directors of the IDB entered into a contract of value with the developer/bond beneficiary, thereby receiving "something of value," which is prohibited by La. R.S. 42:1111, et seq. This director voted at the 18 December 2002 meeting of the IDB on a matter affecting the subject bonds. Eight of the fourteen members of the IDB were present at the meeting (a minimum quorum) and the resolution passed on an 8-0 vote.
While we admit that the evidence submitted by the appellants is potentially disturbing, this court is a court of record, which must limit its review to the evidence in the record before it. Ventura v. Rubio, XXXX-XXXX, pp. 3-4 (La.App. 4 Cir. 3/16/01), 785 So.2d 880, 885. Pursuant to La. C.C.P. art. 2164, an appellate court must render a judgment upon the record on appeal. The record on this appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings, unless otherwise designated. La. C.C.P. arts. 2127 and 2128. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Augustus v. St. Mary Parish School Board, 95-2498, p. 16 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1156. The appellate briefs or motions of parties and attachments thereto are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred to therein, or in exhibits attached thereto, if those facts are not in the record on appeal. Id. The appellants must seek their remedy, if any, before the trial court. See La. C.C.P. art.2001, et seq.
Appellants assign four errors to the trial court. First, appellants argue that the trial court erred in denying appellants' Motion to Compel more complete answers to discovery, thereby denying the appellants the opportunity to obtain documents that are vital and indispensable to their case. Second, appellants assert that the State Bond Commission's rules and regulations governing the filing of bonds were violated by the plaintiff and that the violations constitute substantial defects, material errors, and omissions in the bond issue pursuant to La. R.S. 13:5130. Third, the appellants argue that the bond issuance in question is contrary to law as the proceedings of the IDB authorizing the issuance of the bonds both failed to establish a public purpose for the bonds and further conferred unusual and unequal privileges and financial advantages on purely private interests, in violation of Article VII, Section 14 of the Louisiana Constitution. Finally, appellants assert that the trial court erred in severing the third party demand of the defendants/ appellants against the State Bond Commission and in rendering judgment on the principle demand, insofar as the appellants were denied the opportunity to prove a material defect of the bonds sought to be validated in the main demand.
With regard to the first assignment of error, the record reflects that the appellants served requests for admissions as well as interrogatories and requests for production of documents on the IDB. Although the IDB answered the requests for admissions, appellants maintain that the answers given are incomplete and, as such, should operate to constitute admissions *745 against the IDB. A motion to compel was filed with the trial court and heard in open court and the trial court denied the motion to compel, finding that the answers provided by the IDB were sufficient. As the appellants were unable to obtain documents they sought from the IDB through the previously propounded discovery, it served subpoenas duces tecum on the IDB on 1 April 2003, one day prior to the hearing on the motion for judgment. The IDB filed a motion to quash the subpoena on April 2, 2003, and the motion was granted by the trial court.
Appellants argue that complete answers to discovery would have proved their defenses and reconventional demands, thereby defeating the motion for judgment. They further argue that, as a result, they were denied procedural due process. Appellants point out that, although the procedure for hearing bond validation matters under La. R.S. 13:5121, et seq., provides for an expedited consideration by the trial court, this procedure is in no way meant to divest the appellants of a meaningful opportunity to complete discovery, which they attempted to do in the very limited time they had before the hearing on the motion for judgment.
The IDB, however, maintains that it was served with the subpoena duces tecum on 1 April 2003, less than 48 hours before the hearing date of 2 April 2003, which was both unreasonable and oppressive. In addition to the time limitation, the subpoena duces tecum sought numerous documents that were a matter of public record and not beyond the reach of the appellants. Thus, although the IDB admittedly possessed some of the requested records, the appellants had ample opportunity to obtain the public records prior to issuing the subpoena duces tecum, and simply failed to do so. The IDB contends that the trial court was well within its discretion in quashing the subpoenas duces tecum and in denying the appellants further relief on the motion to compel.
No constitutional right to discovery exists; discovery is a statutorily created privilege. Council of the City of New Orleans v. All Taxpayers, Property Owners, XXXX-XXXX (La.App. 4 Cir. 2/24/03), 841 So.2d 72. While the courts should construe the discovery statutes broadly and liberally, as a general rule, the trial court's discretion in discovery matters is vast. See, Succession of Manheim, 98-2051 (La.App. 4 Cir. 4/21/99), 734 So.2d 119, 125, writ denied, 99-1861 (La.10/8/99), 751 So.2d 218. Absent an abuse of discretion, an appeal court should not reverse a trial court's discovery ruling. Id. See also, Laburre v. East Jefferson General Hospital, 555 So.2d 1381, 1385 (La.1990).
After reviewing the record on appeal, we do not find that the trial court abused its discretion in denying the appellants the discovery relief they have requested. The record reflects that the trial court found that the requests for admissions propounded by the appellants were adequately answered by the IDB and we have found nothing to indicate that the trial court abused its discretion in so finding. Accordingly, we reject this assignment of error.
With regard to the second assignment of error, the appellants argue that the State Bond Commission's rules and regulations governing the filing of bonds were violated by the plaintiff and that those violations constitute substantial defects, material errors, and omissions in the bond issue pursuant to La. R.S. 13:5130. La. R.S. 13:5130 provides in pertinent part as follows:
No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial *746 defects, material errors and omissions in the incidents of the bond issue. Matters of form shall be disregarded. [Emphasis added.]
In particular, appellants maintain that because the bond beneficiary is neither the owner nor the developer of the property to be transferred, there is a substantial defect and material error in the issuance of the bonds. Appellants argue that in the published bond resolution, Riverview is identified as the developer and the owner of the property to be transferred to the IDB and as the beneficiary of the bond proceeds. Riverview is not the owner of the property to be transferred, nor the developer, and is no longer entitled to be the beneficiary of the bond proceeds, and cannot grant a mortgage on the property to the IDB, as appellants maintain is required by La. R.S. 51:1158. Thus, according to the appellants, the publication of inaccurate information regarding the issuance of the bonds is a substantial defect and material error and, thus, the bonds were improperly approved by the State Bond Commission.
IDB argues that this argument is without merit, as there is no mortgage securing the bonds and that no mortgage is required by La. R.S. 51:1158. It further maintains that the identity of the owner of the property to be purchased by the IDB is of no moment to the validity or security of the bonds.
After reviewing the applicable statute and the record on appeal, we agree with the IDB. There is no requirement for a mortgage in La. R.S. 51:1158 and no mortgage will be securing the bonds. Therefore, there can be no substantial defect on the grounds that Riverview is incapable of granting a mortgage on the property in question. Nothing in the bond proposal materials suggests that Riverview is or will be the owner of the property in question. Riverview is the lessee. Further, as Riverview is not improperly characterized in the proposal as the owner of the property in question, we do not find that the bonds contain substantial defects or material errors on that basis.
Appellants further contend that the bond application filed on 18 December 2002, and approved by the State Bond Commission the next day, violated the commission's rules and regulations that require an application be submitted no later than twenty working days prior to the State Bond Commission meeting or the application will not be considered, absent an extraordinary case of emergency.
In response, the IDB states that the State Bond Commission adopted a resolution on 22 July 2002, granting preliminary approval to the issuance of the bonds, and that the 19 December 2002 resolution gave final approval to the issuance, sale, and delivery of the bonds. The IDB contends that the 19 December 2002 approval merely confirms its prior resolutions and does not violate commission rules. In addition, the IDB argues that filing rules are procedural in nature, can be waived by the commission and do not rise to the level of substantial defects, material errors, or material omissions. Finally, the IDB points out that the commission refused to rehear this issue on 20 February 2003, based on a Letter of Advice issued by the attorney general on 9 January 2003.
La. R.S. 13:5130 provides as follows:
No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded. [Emphasis added.]
*747 The appellants are relying on La. Admin. Code 71:III § 103(C), which provides in pertinent part:
C. Applications ... must be filed with the commission at least 20 working days prior to the commission meeting at which the application will be considered. However, the secretary of the commission may approve a later filing for an emergency or an extraordinary situation.... Unless otherwise provided by these rules, all information relating to an application shall be submitted to the commission no later than 10 working days prior to the commission meeting at which the application will be considered; otherwise the application will not be docketed for consideration.
We have carefully reviewed the record and note that the resolution at issue was not a new application, but was a resolution to amend prior resolutions previously approved by the commission.
As noted in Attorney General Opinion Number 79-1384, as confirmed by Attorney General Opinion Number 02-456, procedural rules "are routinely suspended by public bodies under applicable rules." All prior documentation relating to the application had been previously filed by the IDB and approved by the commission. We have reviewed the Louisiana Administrative Code rules applicable to the commission, as well as the rules of the commission set forth in Louisiana Register.[1] Neither Procedural Rule 2, relied upon by the IDB, nor La. Admin. Code 71:III § 103(C), cited by the appellants, addresses the filing of amendments to previously approved applications. Therefore, we do not find that the filing of the amended resolution by the IDB on 10 December 2002 constitutes a substantial defect, material error or omission, as required by the statute.
In the third assignment of error, the appellants maintain that the bonds are invalid, as La. R.S. 13:5122 provides, in pertinent part, that:
... It is hereby declared that it is the intention of the legislature in enacting this law to provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to the bonds is necessary to insure the marketability of the bonds in investment channels....
Appellants maintain that the bond issuance in question is contrary to law as the proceedings of the IDB authorizing the issuance of those bonds both failed to establish a public purpose for the bonds and further conferred unusual and unequal privileges and financial advantages on purely private interests, in violation of Article VII, Section 14 of the Constitution of the State of Louisiana. Specifically, appellants maintain that the records subpoenaed from the tax assessor's office demonstrate an enormous disparity between the real estate taxes now to be paid by the private property owners made defendants in this case and the real estate taxes that would have been paid by the private property owners without the ad valorem exemptions *748 granted by the plaintiff. Accordingly, the appellants argue that the bonds proposed for issuance by the plaintiff are inconsistent with the public purpose requirements of the constitution.[2]
The IDB counters that, pursuant to La. R.S. 51:1152, the legislature provided for industrial development boards as essential to the economic growth of the state and to the full employment, welfare, and prosperity of its citizens. La. R.S. 51:1152(A)(1). Further, R.S. 51:1152(A)(6) provides that:
"... the means and measures herein authorized by this chapter and the assistance provided in this chapter, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the health, welfare, and safety of the citizens of the state ... economically by the securing and retaining of private industrial, commercial, and other enterprises and the resulting maintenance of a higher level of employment and economic activity and stability."
Further, R.S. 51:1152(B) specifically authorizes the incorporation of public corporations to "acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to promote industry and develop trade by inducing manufacturing, industrial, commercial, and other enterprises to locate in this state...."
The IDB notes that the development projects consisting of the Wal Mart Super Center and the development of mixed-income housing in the St. Thomas Economic Development District was determined by the city of New Orleans to "create 1000 jobs and over 880 market-rate and 343 affordable housing units." Further, the IDB asserts that property owned by an *749 industrial board is public property used for a public purpose. Slay v. Louisiana Energy and Power Authority, 473 So.2d 51 (La.1985).
The argument put forth by the appellant that the project is an improper donation of public funds or property under Article VII, Section 14 of the Louisiana Constitution is similarly controverted. In order for there to be an unconstitutional grant or donation of public funds, there must first be a determination that there are public funds or other items of value being donated that actually belong to the governmental entity. Article VII, Section 21(A) of the constitution clearly provides an exemption of property owned by an industrial board from ad valorem taxes. Because the only alleged "donation" of public funds is the exemption from payment of ad valorem taxes for the lessee of the property in question, no governmental entity is actually giving up anything of value, insofar as the property owned by the IDB would not be subject to ad valorem taxes anyway.[3] Thus, no improper donation of public funds to a private entity exists, as the benefit realized by the private entity in this matter is not one that would have been enjoyed by the public notwithstanding the proposed issuance of the bonds.
The final assignment of error concerns the third-party demand the appellants filed against the State Bond Commission. The IDB argues that the State Bond Commission is not an indispensable third party to the case and that the approval of the State Bond Commission of the bonds can be proved without making the commission a party to the validation suit.
Before the hearing, the trial court severed the third-party demand and thereafter rendered judgment on the motion for judgment only. The appellants contend that the third-party demand should have been tried simultaneously with the main demand because the failure to do so deprived them of the opportunity of proving a material defect of the bonds in question.
In response to this assignment, the IDB states that the State Bond Commission is not an indispensable party to these proceedings and commission approval of the bonds can be proven without the commission's involvement as a party. The IDB further asserts that because the records of the commission are public, the appellants' ability to prove their case was not thwarted by the commission's absence.
Louisiana jurisprudence describes an "indispensable party" as one whose interest in the subject matter of the litigation is so interrelated that a complete adjudication of the controversy cannot be made unless the party is joined in the action. Smith v. State, 620 So.2d 1172, 1178 (La. App. 1 Cir.1992); Hatfield v. Bush, 540 So.2d 1178, 1180 (La.App. 1 Cir.1989), writ denied, 576 So.2d 49 (La.1991).
Since mid-1995, the Louisiana Code of Civil Procedure no longer refers to parties as "necessary" or "indispensable." Rather, the code mandates an analysis of the interests of the joined and non-joined parties with respect to the action to determine whether the action may proceed. La. C.C.P. art. 641 mandates, in pertinent part: "a person shall be joined as a party in the action when either: (1) In his absence complete relief cannot be accorded among those already parties...." Pursuant to La. C.C.P. art. 642, "[i]f a person described in Article 641 cannot be *750 made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed." Failure to join a party may be noticed by the trial or appellate court on its own motion. La. C.C.P. art. 645.
In the instant matter, the commission's presence is not necessary for complete relief because the issue of whether the commission followed its procedures is a matter of ordinary proof that the appellants could have attacked collaterally in this case in the trial court. The commission's presence as a party was not needed to call commission witnesses or introduce commission documents to demonstrate that there was a material defect in the bonds.
We also note that the appellants have filed a separate suit against the State Bond Commission, which is currently pending in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, number C 504986, wherein they challenge the validity of the commission's actions and seek to set aside the actions taken by the commission approving the bonds. The appellants could have obtained relevant discovery from that litigation and introduced it in the hearing below to prove its case. In any event, no showing of a substantial defect, material error or omission has been made here and, therefore, this assignment of error is without merit.
Based on the foregoing, we affirm the judgment of the trial court and deny the appellants' motion to remand. All costs of this appeal are assessed against the appellants.
AFFIRMED; MOTION TO REMAND DENIED.
NOTES
[1] Procedural Rule 2 found in the Louisiana Register requires that applications be filed with the commission at least eight working days in advance of a commission meeting, except in cases of absolute emergencies or in cases where staff permission for later filing of routine matters is granted. See LR 2:343, § II(2) (November 1976), amended LR 4:392 (October 1979).
[2] Appellants cite an opinion issued by the Attorney General of Louisiana (1991 WL 575008) as authority for the interpretation of Article VII, Section 14(A) of the Constitution of the State of Louisiana. The opinion provides that:

[t]he following principles of interpretation of this constitutional provision may be summarized as follows:
1) Any expenditure of public funds or alienation or use of any public things of value must be mandated by a legal obligation which obliges such use for a definite and lawful public purpose.
2) The predicate legal obligation may be created by any normative source of law, which has coercive and binding effect. These include the constitution, statutes, ordinances which are law rather than enabling acts, home rule charters, corporate articles of incorporation, and contracts which are validly authorized by an independent source of law.
3) If the public purpose for the use, alienation or expenditure is legally obligatory upon the public body or officer, or in some cases the recipient, the actions takenthe means for the public purpose soughtmust also be lawful.
4) A statute, ordinance, home rule charter, articles of incorporation or other source of a legal obligation which dedicates the use of public property to a specific public purpose creates a presumption that such use or transfer serves a public benefit proportionate to the cost.
5) Where the legal obligation arises from a discretionary power or duty expressed in a contract, such as in the police power, the public benefit and its proportionality are not presumed but must be shown.
6) An ultra vires statute, ordinance, contract, etc. creates no legal obligation under Art. VII, § 14.
7) The public purpose for the alienation, use or transfer of public things of value must be mandated by a legal obligation or duty and must be accomplished or facilitated by actions which are a lawful or authorized means to the realization or achievement of that public purpose. This is the constitutional norm of La. Const. Art. VII, § 14.
We do not find that the bond proposals at issue in this matter violate any "principle of interpretation" as set forth in the cited attorney general opinion.
[3] In an opinion issued by the Attorney General of Louisiana, Op.Atty.Gen. No. 99-267-A, the attorney general concluded that "[i]f the property is exempt from ad valorem tax, there can be no violation of Article VII, Section 14...."