MAX N. TOBIAS, JR., Judge.
liThe plaintiff, Regina Melerine (“Regina”), appeals from an adverse judgment rendered in favor of defendant, Darren O’Connor (“Darren”), denying her claim for tortious conversion. For the following reasons, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL BACKGROUND
Regina and Darren cohabitated for a period of eight to twelve years in a residence Darren owned located at 2816 Lloyds Avenue in Chalmette.[1] While Darren claims to have asked her to move out of the residence, it is undisputed that the parties were residing together at the Lloyds Avenue address on 29 August 2005, the date Hurricane Katrina devastated the area. During their cohabitation, certain movable property belonging to Regina was placed in Darren’s residence, which property was subsequently destroyed during the flooding that occurred in the aftermath of the hurricane.
At the time of Hurricane Katrina, Darren’s residence and its contents were insured pursuant to a flood policy issued to him by Fidelity National Insurance Company (“Fidelity National”).[2] Following the hurricane, Darren filed a flood ^damage claim with Fidelity National seeking payment for the losses associated with the damage sustained to both his home and its contents. Regarding his contents claim, it is undisputed that the list of damaged *1202 property submitted to Fidelity National, which was initially prepared by Regina, identified not only items owned by Darren, but also included personal property owned by Regina that was located in the insured residence at the time it flooded.[3] We note that no presumption exists that an insured who submits a claim is being dishonest in its preparation. The total flood loss claimed by Darren on the Fidelity National personal property adjustment was $82,180.00. On 22 November 2005, Fidelity paid to Darren the policy limits of $50,000.00 for the contents portion of his property damage claim.
Following receipt of Fidelity National’s payment, Regina made demand upon Darren to pay to her that portion of the insurance proceeds relating to the loss of her personal property, or $29,375.00. When he refused to do so, Regina filed suit against him for conversion. Specifically, although Regina does not contend that Darren is responsible to her for the loss of her movables as an insurer, she does claim that Darren, in effect, asserted ownership over (or converted) her personal property when he used the value of the destroyed movables she owned to increase the total value of his contents claim for the loss of his own movables that was submitted to Fidelity National, and which values were relied upon by Fidelity National in computing its loss calculations.
|sRegina’s conversion claim proceeded to trial on 19 September 2012. The trial court took the matter under advisement and, thereafter, on 19 November 2012, issued judgment with written reasons denying Regina’s claim for conversion.[4] Regina timely perfected the instant devolutive appeal.

DISCUSSION

An appellate court may not overturn a judgment of the trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transp. and Development, 617 So.2d 880, 882, n. 2 (La. 1993). Where a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a trial court’s factual conclusions, an appellate court must satisfy a two-step process based upon the record as a whole. It must conclude that (1) no reasonable factual basis exists for the trial court’s finding, and that (2) the finding of fact is clearly wrong. See Johnson v. Morehouse General Hospital, 10-0837, 10-0488, p. 12 (La.5/10/11), 63 So.3d 87, 96. The issue to be resolved by a reviewing court is whether the trier of fact’s conclusion is reasonable. Stobart, 617 So.2d at 882. Thus, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding is clearly wrong. Id. Additionally, the court of appeal may not reverse those findings, even though convinced that, had it been |4sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883.
On questions of law, the manifest error rule does not apply and the appellate *1203 court gives no special weight to the findings of the district court, but exercises its constitutional duty to review questions of law and renders judgment on the record. See Cannizzarro ex rel. State v. American Bankers Ins. Co., 12-1455, 12-1456, p. B (La.App. 4 Cir. 7/10/13), 120 So.3d 853, 856. In such cases, appellate review of questions of law is simply to discern whether the trial court was legally correct or legally incorrect. Winston v. Millaud, 05-0338, p. 5 (La.App. 4 Cir. 4/12/06), 930 So.2d 144, 150.
The sole issue presented in the case sub judice is whether the trial court was manifestly erroneous in dismissing Regina’s conversion claim and failing to award her the full value of her destroyed and/or damaged personal property ($29,375.00), when the value of this property was included by Fidelity National in computing its loss adjustment of Darren’s flood claim. Alternatively, Regina seeks recovery of that portion of the insurance proceeds Darren received that relates to the value of her damaged personal property, which was included in the claim submitted to Fidelity National (35.75% of $82,180.00, or $17,875.00). In denying Regina’s claim for conversion, the trial court stated in its written reasons for judgment that “the Court is not aware of any support, nor has plaintiff provide [sic] any citation, for her position that she should receive a portion of the insurance payment under the facts presented herein.” For the following reasons, we agree with the trial court; Regina failed to prove her conversion claim against Darren. Accordingly, we affirm the trial court’s judgment dismissing Regina’s claim for conversion.
|Jn Louisiana, conversion is an intentional tort and consists of an act in derogation of the plaintiffs possessory rights. See Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 760 (La.1985). To constitute a conversion, an intentional dispossession and/or exercise of dominion or control over the property of another in denial of or inconsistent with the owner’s rights must be established. See Kinchen v. Louie Dabdoub Sell Cars, Inc., 05-218, pp. 6-7 (La.App. 5 Cir. 10/6/05), 912 So.2d 715, 718. In Dual Drilling Co. v. Mills Equipment Investments, Inc., 98-0343, pp. 4-6 (La.12/1/98), 721 So.2d 853, 856-57, the Court addressed the concept of conversion, in pertinent part:
The Civil Code itself does not identify causes of action for “conversion.” However, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables [is] protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages. La. Civ.Code arts. 511, 515, 521, 524, 526, and 2315. Consequently, the dispossessed owner of a corporeal movable may be accorded one of three actions to enforce his rights of ownership.
The first is the revendicatory action for the recovery of a movable transferred: (1) by the owner or legal possessor to a person in bad faith, (2) for less than fair value, or (3) when the movable was lost or stolen. A.N. YIANNOPOU-LOS, LOUISIANA CIVIL LAW TREATISE §§ 350-351, at 680-683 (2 nd ed. 1991 & Supp.1998). The second action arises under the law of delictual obligations and exists under the theory of unjust enrichment. YIANNOPOU-LOS, LOUISIANA CIVIL LAW TREATISE § 356, at 689-690.
[[Image here]]
The third action, ... is known as a delictual action. It is available to an owner dispossessed as a result of an offense or quasi-offense or, in other words, a “tort.” This action is grounded *1204 on the unlawful interference with the ownership or possession of a movable and is frequently termed an action for “conversion” in Louisiana. A | (¡conversion is committed with any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. FRANK L. MA-RAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 1-2, at 3 (1996 & Supp.1998); Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (La.1957); see also Louisiana State Bar Assoc. v. Hinrichs, 486 So.2d 116 (La. 1986). The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation. (Footnotes in original text omitted.)
In the instant case, Regina claims that Darren “asserted ownership over [her] property” when he used it “to increase his contents recovery (because he never advised Fidelity [National] that he did not own [her] property even though it was included on the contents list he submitted to Fidelity [National]),” and that, in doing so, his tortious and unlawful actions constituted a conversion of her personal property into his own. A review of the record in this case, however, belies Regina’s contentions.
It is undisputed that the personal property Regina claims Darren converted to his own was completely damaged and/or destroyed in Hurricane Katrina prior to his ever having prepared or submitted a contents list claim to Fidelity National. Moreover, our review of the record in its entirety reveals that it contains no evidence establishing that Darren (1) obtained possession of Regina’s movables in an unauthorized manner, (2) removed Regina’s property from his home with the intent to exercise dominion or control over it, (3) transferred possession of Regina’s property to a third party without her authority, (4) withheld from Regina | ^possession of her personal property, (5) destroyed or altered her personal property, or (6) asserted ownership over Regina’s property so as to dispossess her of it or interfere with her right of ownership. Rather, the property at issue was completely destroyed.
Moreover, Regina readily admitted at trial that she personally prepared the initial contents list that included her personal property, which was submitted to Fidelity National. This fact alone discounts her accusation that Darren’s inclusion of her personal property was an intention to dispossess her of the ownership of her property. Cf., Aymond v. State, Dept. of Revenue and Taxation, 95-1663, pp. 4-5 (LaApp. 1 Cir. 4/4/96), 672 So.2d 273, 276 (“[O]ne who might otherwise be entitled to maintain an action for conversion of his goods may afford the alleged wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful, or by ratification thereof. If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion of the property. In other words, the right to sue in conversion may be defeated by any act or conduct which amounts to an estop-pel.”) (Citations omitted.)
In short, even if we were to determine that Darren’s actions amounted to a conversion — which, we do not — the fact that Regina personally prepared the contents loss statement that included her property leads us to conclude that she waived any *1205 right she may have had to treat his actions as a conversion of her property. As previously stated, in order to constitute a conversion, an intentional dispossession and/or exercise of dominion or control over the property of another in denial of or inconsistent with the owner’s rights must be established. In the instant case, the record on appeal does not support such a finding. Accordingly, the trial court was neither manifestly erroneous nor clearly wrong in its ^determination that, under the facts presented, Regina is not entitled to the recovery she seeks.
Our review of the record on appeal and the applicable law convinces us that the only way Regina would be entitled to recover any portion of the $50,000.00 in insurance proceeds that Darren received is if she proved she was an insured under the flood policy Fidelity National issued to Darren. Regina failed to do so. The mere fact that in her brief on appeal she repeatedly refers to herself as an insured under Darren’s flood policy does not make her one. Despite her contentions to the contrary, we disagree that it has been “proven and accepted” that Regina’s property was covered under the policy.
A court of appeal is a court of record, which must limit its review to evidence in the record before it. La. C.C.P. art. 2164; Board of Directors of Industrial Development Bd. of City of New Orleans v. All Taxpayers, Property Owners, Citizens of New Orleans, 03-0826, p. 4 (La. App. 4 Cir. 5/29/03), 848 So.2d 740, 744. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Id. While a copy of the Flood Declarations Policy page, introduced into evidence at trial without objection, is contained in the record, a copy of the Fidelity National flood policy itself is not. According to the Flood Declarations Policy page, Darren is the only named insured under the policy. This fact is substantiated by Darren’s trial testimony, which confirms his is the only named insured. Other than Regina’s unsubstantiated assertions to the contrary in her counsel’s arguments to the court, Darren’s testimony is uncontroverted.
The Flood Policy Declarations contained in the record indicates that the flood policy Fidelity National issued to Darren was a “dwelling” type Standard | nFlood Insurance Policy (“SFIP”). SFIP policies are issued under the auspices of the National Flood Insurance Program (“NFIP”), which was established by Congress under the National Flood Insurance Act of 1968. See 42 U.S.C. § 4001. “Flood insurance policies can be issued directly by [the Federal Emergency Management Agency] or through private insurers known as ‘Write Your Own’ companies [such as Fidelity National]. By statute, these companies are fiscal agents of the United States.” Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir.1998); 42 U.S.C. § 4071. The terms and conditions of all federal flood insurance policies are fixed. See Gowland v. Aetna, 143 F.3d at 953. The provisions of a policy issued under a federal program must be strictly construed and enforced. Id. at 954. The specific terms of a SFIP dwelling policy, such as the one Fidelity National issued to Darren, were established by regulations promulgated by FEMA, and are found at Appendix A(l) to Part 61 of Title 44 of the Code of Federal Regulations.
Pursuant to La. C.E. art. 202, a court may take judicial notice of certain matters. Specifically, Article 202 provides, in pertinent part:
A. Mandatory. A court, whether requested to do so or not, shall take judicial notice of the laws of the United States, of every state, territory, and other jurisdiction of the United States, and of the ordinances enacted by any political subdivision *1206 within the court’s territorial jurisdiction w hen ever certified copies of the ordinances have been filed with the clerk of that court.
B. Other legal matters. (1) A court shall take judicial notice of the following if a party requests it and provides the court with the information needed by it to comply with the request, and may take judicial notice without request of a party of: (e) Rule and decisions of ... agencies of the United States ... or other jurisdiction of the United States which have been duly published and promulgated and which have the effect of |inlaw within their respective jurisdictions. (Emphasis supplied.)
We note that neither party requested that the court take judicial notice of the terms and conditions of the SFIP dwelling policy set forth in 44 C.F.R. pt. 61, app. A(l) or provided the court with the information it needed to comply with such a request. Accordingly, while La. C.E. art. 202 provides an avenue by which the trial court could have, in its discretion, taken judicial notice of the provisions of the SFIP issued to Darren, the trial court was not required to and did not do so in this case. Even if, however, this court were to consider it an abuse of discretion that the trial court failed to take judicial notice of the SFIP Fidelity National issued to Darren, Regina still does not prevail on her claim for conversion of the policy proceeds paid to Darren (i.e., that portion of the proceeds attributed to the value of the destroyed personal property belonging to her). The personal property coverage provided by a SFIP only applies to property owned by the named insured (i e., Darren), or the named insured’s “household family members.” As Darren and Regina both testified at trial that they were never married, the record is devoid of evidence establishing that Regina qualified as a “household family member” or that her personal property was otherwise covered under the policy.
Without a copy of the policy, and absent a stipulation by the parties or a factual or legal determination made by the court below that Regina is, in fact or by law, an insured or an additional insured under Fidelity National’s flood policy, we conclude that Regina failed to establish her status as an insured entitled to recover any portion of the policy proceeds paid to Darren.
According to our review of Fidelity National’s flood loss adjustment of Darren’s contents claim, and considering the various depreciation calculations |nmade by its adjuster, as noted by the trial court in its written reasons for judgment, it does appear that Darren received a greater sum from Fidelity National than he may have been entitled to without the inclusion of Regina’s property in the adjustment. We agree with the trial court, however, that to the extent Darren may have been unjustly enriched by the amount he received from Fidelity National, the right to recoup any overpayment inures to the benefit of the insurance company, not to Regina.
Under the facts presented in this case, and applying the law applicable to those facts, we do not find the trial court manifestly erred or was clearly wrong in its findings and/or legal determination that Regina failed to establish her entitlement to any portion of the insurance payment made to Darren.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s judgment dismissing Regina’s claim against Darren for conversion.

AFFIRMED.

. Regina claims they cohabitated for twelve years, while Darren contends they lived together for eight or nine.

. While Regina introduced Fidelity National's response to a subpoena duces tecum into evidence pursuant to La. C.C.P. arts. 1450 A(3)(a)(witness was unavailable) and A(3)(b)(witness resides more than one hundred miles from the place of trial), which response contained a copy of Fidelity National’s claims file, including a copy of a Flood Policy Declarations page for the policy in effect from 3/07/2005 to 3/07/2006, Fidelity National’s file did not contain a copy of the actual flood policy that it issued to Darren. A copy of the flood policy was not otherwise introduced into evidence nor is the policy contained in the appellate record.

. We note that no presumption exists that an insured who submits a claim is being dishonest in its preparation.

. In its judgment, the trial court awarded $5,496.50 to Regina for other claims she asserted against Darren. An appeal as to those claims has not been lodged and, thus, that portion of the judgment awarding those amounts is now final and non-appealable.