750 So.2d 234 (1999)
Sheila LAWSON, Lisa Prince, and Kimberly Kady
v.
Dr. Jeffrey STRAUS, Louisiana Eye Center of New Orleans, PC d/b/a Straus Azar Medical Surgical and Lazer Eye Center, Medical Care International, Continental Casualty Company, and St. Paul Insurance Company.
No. 98-CA-2096.
Court of Appeal of Louisiana, Fourth Circuit.
December 8, 1999.
Writ Denied March 17, 2000.
*236 Phillip C. Ciaccio, Jr., New Orleans, Louisiana, and Dwan S. Hilferty, New Orleans, Louisiana, Attorneys for Plaintiffs/Appellants.
Thomas E. Loehn, Boggs, Loehn & Rodrigue, New Orleans, Louisiana, Attorney for Dr. Jeffrey Straus.
Peter Sperling, New Orleans, Louisiana, Attorney for Louisiana Eye Center of New Orleans, etc.
George Richaud, Young, Richaud & Myers, New Orleans, Louisiana, Attorney for Insurance Company of North America.
Margaret Bradley, Law Offices of Robert Birtch, Metairie, Louisiana, Attorney for St. Paul Insurance Company.
Gwen Hebert, New Orleans, Louisiana, Attorney for Continental Casualty Company.
Court composed of Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, and Judge MIRIAM G. WALTZER.
JONES, Judge.
Plaintiffs/appellants, Sheila Lawson, Lisa Prince and Kim Kady, appeal the judgment of the trial court dismissing their claim for sexual harassment. The jury found that the plaintiffs had suffered injury, but that it neither rose to the level of sexual harassment nor was intentional on the part of the accused. After reviewing the record, we find that the trial court *237 committed reversible error, therefore, requiring a de novo review. Having completed our review, we find no liability.

FACTS
Dr. Jeffrey Straus was an employee and later the sole stockholder of the Louisiana Eye Center of New Orleans (Eye Center). He and three of his fellow employees, Sheila Lawson, Lisa Prince and Kimberly Kady engaged in consensual sex, sexual banter, partying, and/or flirtation both in the office, after work, and/or on vacation. Although this activity is confirmed by all parties involved, all three women resigned on the same day and cited sexual harassment and intentional infliction of emotional distress as the reason for their resignation. The plaintiffs filed suit on November 3, 1997 against Dr. Straus personally, the Eye Center, Insurance Company of North America (INA), St. Paul Fire and Marine Company, and Continental Casualty Company (CCC).
At the beginning of the case, the trial court dismissed INA and St. Paul because each policy contained specific exclusions for intentional acts and for acts of discrimination under La. R.S. 23:1006[1]. With regard to these companies, this Court, in a previous writ application, reversed that decision with regard to the intentional infliction of emotional distress issue, but not with regard to the sexual harassment claim.
At trial, the women claimed that Dr. Straus exposed himself to them at the office, forced them to masturbate him and then ejaculated on their clothes or on office furniture. They also claimed that he kissed them, lifted their shirts, sucked their breasts, and pushed one of their heads into his genital region, all without permission.
During trial, the court refused to allow the testimony of Mary Champion, Dianne Southall, and Jane Doe regarding unwelcomed sexual encounters with Dr. Straus. Nevertheless, the plaintiffs' counsel proffered their depositions. Champion, another employee at the Eye Center, testified in her deposition that Dr. Straus returned a medical history form to her filled with derogatory comments about her and her body, some with sexual overtones. Southall testified at her deposition that Dr. Straus sexually assaulted her at Sheila Lawson's home while they were on a date. Jane Doe, one of Dr. Straus' former patients, testified that Dr. Straus tried to put his penis in her mouth while she was on the examination table.
The trial court also refused to allow plaintiffs counsel to ask questions regarding how the Eye Center's management handled charges of sexual harassment lodged by Jennifer Treadway and Kelly Theriot, former employees of the Eye Center. Treadway never filed suit; Theriot filed suit, but later dismissed the case without prejudice and without settlement.
At the end of the plaintiffs case, INA and St. Paul moved for and were granted directed verdicts based on the fact that the insured, Eye Center, could not be held vicariously liable for the alleged conduct of Dr. Straus.
At the end of the trial, the court refused some of the plaintiffs proposed jury instructions and chose to use its verdict interrogatory forms. When the jurors expressed some confusion about using the forms, the judge entered the jury room without the consent of all trial counsel and tried to explain the procedure for answering the forms. The trial judge also indicated that he would declare a mistrial if they could not reach a verdict. Opposing parties present different accounts of whether the trial judge also informed the jury that they would not have to re-hear the case.
Counsel for the Eye Center admitted at oral argument that although the judge did give notice to defense counsel that he intended to enter the jury room, the plaintiffs' *238 counsel was not present in the courtroom at that time and therefore did not receive notice. The record reflects, however, that plaintiffs' counsel witnessed the trial judge entering the jury room, but did not enter an objection to his actions until after the jury rendered its verdict.
The jury returned a verdict in favor of the remaining defendants, Dr. Straus, the Eye Center, and Continental Casualty Company. The plaintiffs then filed a Motion for a New Trial based on the trial court's improper out-of-court conversations with the jury.
The Motion for New Trial did not mention the directed verdicts granted to INA and St. Paul. Counsel for Lawson, Prince and Kady also failed to raise their potential appeal of the directed verdicts in oral augments before the trial court on the motion on January 20. The trial judge explained, in a Per Curiam entered at the January 20 hearing, that the jurors only wanted to know how to proceed sequentially through the verdict form and what would happen if they could not agree on an interrogatory. However, the court reporter who entered the jury room with the trial judge, Mrs. Callais, gave testimony at the hearing on the Motion for New Trial. She testified that the jurors had many questions and that there was no order in the deliberation room. Present in the bailiff's capacity only, she did not record the interchange and therefore, there is no record of what questions were actually answered. The trial court denied the Motion for New Trial.
The plaintiffs' Motion for Devolutive Appeal also fails to mention the directed verdicts. The Motion for Appeal specifically challenged the jury trial verdict of December 8, the judgment of December 9, and the judgments of January 20 and 21 denying the motion for new trial. However, the Motion for Appeal did not challenge the December 3 judgment granting the directed verdicts.
While considering the Motion to Dismiss the Appeal, we granted INA's motion, but retained St. Paul as a party. Both parties joined in an Application for Rehearing and we found, on rehearing, that neither motion was proper because the directed verdicts were interlocutory judgments rewiewable by assignment of error in connection with the appeal of the final judgment. This Court also found that when an appeal is taken from a final judgment, the appellant is entitled to a review of all adverse interlocutory rulings, in addition to the review of the final judgment. We stated that an appropriate procedure for reviewing the December 3 judgments under the appeal of the final judgment would be to include those judgments in the assignments of error. No party to the instant case disputes that the plaintiffs complained about the interlocutory judgments in their assignments of error. This Court stated unequivocally that these objections were sufficient and that it was not required that they be specifically referred to in the motion for appeal.

JUDICIAL MISCONDUCT
In their first assignment of error, Lawson, Prince and Kady argue that the trial judge's improper communication with the jury precluded the fair administration of justice and warrants a new trial pursuant to La. C.C.P. arts. 1972 and 1973. They also cite La. C.C.P. art. 1796(C) which states in pertinent part that if the jury requests additional information on a point of law, the court may, after giving notice to the parties, recall the jury to clarify an ambiguous instruction and to give such further instructions that may be appropriate.
Dr. Straus, the Eye Center, and CCC respond that the judge's communication did not rise to the level of reversible error. They argue that a simple reading of the code article exposes the inapplicability of La. C.C.P. art. 1796. They claim that the code article only requires the jury's return to the court room and notice to the parties *239 when the jury desires information on a point of law. Because the judge stated that he only told the jury how to answer the interrogatory form, the appellees argue that this is not a point of law and does not trigger the requirements of the statute.
Dr. Straus, the Eye Center, and CCC also claim that La. C.C.P. art. 1972(3) does not apply because the behavior of the trial judge was not so improper as to preclude the administration of impartial justice. They cite the judge's explanation of what happened in the jury room and his per curiam as ample evidence that his communication with the jury did not affect the substance of the verdict but merely assisted the jury in understanding a court procedure. We disagree.
The Louisiana Supreme Court has determined that when the trial judge improperly communicates with the jury and this conduct sullies the verdict, making it untrustworthy, then the verdict must be overturned. See Jones v. Black, 95-2530 (La.6/28/96), 676 So.2d 1067. In Jones, the case was remanded for a new trial because a judge entered the jury room and encouraged the jurors to avoid a mistrial. See Jones, Id. In this case, although the judge does not admit to encouraging the jury as to any particular verdict, nor to discouraging a mistrial, there is contradictory testimony as to the extent of ex parte conversation with the jury in this case. In addition, the Jones court found that the weight of the evidence in that case was so nearly equal that a first-hand view of the witnesses was essential to a fair resolution of the issues. Id. In this case, the weight of the evidence clearly favors the defendants. Because the record is complete, we have the constitutional authority to decide this case de novo without personally viewing the witnesses. Gonzales v. Xerox Corp., 320 So.2d 163, 166 (La.1975).
Previously, this Court has found that a law clerk's entrance into the jury room did not rise to the level of reversible error. Gormley v. Grand Lodge of State of La., 503 So.2d 181 (La.App. 4 Cir.), writ denied 506 So.2d 1227 (La.1987). In Gormley, the law clerk merely asked what question the jury had and reported it to the court In a concurring opinion, Judge Ward noted that although a new trial may be appropriate where there is an inappropriate communication with the jury, he "would not reverse and remand in this case where the motion for a new trial was not made at the time the misconduct occurred but later, after the plaintiff received an unfavorable verdict." Id. at 187.
Although there are several patent factual similarities between this case and Gormley, we find that the trial judge's conduct in this case constituted clear error and rose to the level of impairing the administration of impartial justice in violation of La. C.C.P. arts. 1972 and 1796. Under article 1796, a trial judge who wishes to communicate with an impaneled jury must give both parties notice of his intentions and recall the jury to the courtroom. A judge who communicates with a jury without notifying the parties and recalling them to the court room, so that the interchange may be entered into the record, does so at its peril. Owens v. Concordia Elec. Co-op., Inc., 95-1255 (La.App. 3 Cir. 6/25/97), 699 So.2d 434, writs denied, 97-2698 (La.1/9/98), 705 So.2d 1113, 97-2728, 705 So.2d 1120 and 97-2736 (La.1/9/98), 705 So.2d 1120. All such communications will be subject to close scrutiny by this Court. We also find that the trial court's failure to notify the plaintiffs' counsel of its plan to speak with the deliberating jury prevented plaintiffs from offering a contemporaneous objection and released their obligation thereon. See Gormley, 503 So.2d at 186.
Regarding the admissibility of testimony made at depositions by Champion, Doe, and Southall, we find their testimony relevant to the case at hand and more probative than prejudicial to Dr. Straus. Therefore, we will consider their *240 testimony as part of our review. Further, as the status of the interlocutory directed verdicts was settled by this Court in an earlier motion to dismiss, INA and St. Paul's liability on the issue of intentional infliction of emotional distress and sexual battery will also be determined de novo, based on the law of vicarious liability.

SEXUAL HARASSMENT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, and SEXUAL BATTERY

1. Sexual Harassment
Lawson, Prince and Kady argued at trial that Dr. Straus commited sexual harassment, intentional infliction of emotional distress, and sexual battery against them at work. Dr. Straus denied most of the physical contact alleged by Lawson, Prince and Kady; he claimed that any other contact was welcome, consensual, and not outrageous.
In order to maintain an action for sexual harassment based on a hostile work environment the plaintiffs must prove that (1) they belonged to a protected group; (2) they were subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take remedial action. Alphonse v. Omni Hotels Management Corp., 94-0157 (La.App. 4 Cir. 9/29/94), 643 So.2d 836, 838-39. Our review of the record indicates that there is ample evidence associated with this case which suggest any sexual activities taking place between Dr. Straus and Lawson, Prince or Kady were welcome.
The record indicates that Lisa Prince admitted to having consensual sex with Dr. Straus and to telling him that if she owned a car like his she could get "laid" every night. She also testified that she voluntarily sat on Dr. Straus' lap at work, as did Sheila Lawson.
Kim Kady acknowledged that she, too, had a sexual history with Dr. Straus. She admitted that she told him that his car's stick shift looked like a penis. She also affirmed that Lawson and Straus called each other "Baby" at work throughout the period of alleged harassment.
Although Lawson claims to have been forced to sit on Dr. Straus' lap, Stacey Babineaux, called to testify by the plaintiffs, confirms Prince's testimony that Lawson did so voluntarily. Dr. Straus' exhibit 12 is a card from Lawson to Dr. Straus, sent after an alleged violent attack in the Bahamas. The greeting reads, "To my baby, I love you". Lawson's clinical psychologist, Dr. Edward H. Schwery also testified that Lawson thought Dr. Straus was in love with her.

2. Intentional Infliction of Emotional Distress
"The elements of intentional infliction of emotional distress are (1) that the conduct of the defendant was extreme and outrageous, (2) that the emotional distress suffered by the plaintiff was severe, and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." Lawson v. Straus, 95-1537 (La. App. 4 Cir. 3/14/96), 673 So.2d 223, 226, writ denied, 96-1709 (La.9/3/96), 678 So.2d 556 (citing White v. Monsanto, 585 So.2d 1205, 1209 (La.1991)).
It is clear from the record that varied types of inappropriate behavior occurred in this medical office. Kady and Lawson admitted that they spoke, at work, about who gave better oral sex. Two witnesses, Stephanie Thompson and Patricia Groetch, called by plaintiffs' counsel, corroborated this testimony. The record indicates that patients and co-workers complained to the Eye Center management about Lawson, Prince and Kady's revealing dress and/or foul language.
Prince bought a penis-shaped birthday cake for Lawson. It stated, "Take it all *241 the way Sheila; Open wide bitch; Look it's a lickety dick". Lawson brought a picture of the cake to work and showed it to her fellow employees.
Although Thompson, Babineaux and Lambert all testified that they all witnessed and/or experienced some level of flirtatious contact with Dr. Straus, they also testified that Lawson, Prince, and Kady were his friends and that they all socialized regularly. Lawson herself admits that Dr. Straus joined them in almost all of their social outings during and after the alleged attacks and harassment. Quinn Lambert, another office employee called by plaintiffs, testified that she was surprised by the lawsuit because all the parties were friends. Kady also testified that Dr. Straus was still her friend even after all the activities.

3. Battery
"Battery is a harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact." Lawson v. Straus, 673 So.2d at 226 [citing Caudle v. Betts, 512 So.2d 389, 391 (La.1987)]. In this case, there is significant evidence that the contacts described by Lawson, Prince and Kady were neither harmful nor offensive.
Regarding the harm, Dr. Pardue, Lawson, Kady, and Prince's psychiatrist and Dr. Schwery, their psychologist, opined that each of these women was, in fact, suffering from varying degrees of anxiety and depression. However, neither doctor could identify the exact cause of this depression because of Lawson, Prince, and Kady's extremely volatile and dysfunctional personal lives, which included physical and mental abuse, drug addiction, and sexual disease and dysfunction. Dr. Pardue testified that their symptoms could have also been caused by their bad relationships. Testimony by both doctors also confirmed that the women did not seek counseling until trial, even though the most severe incidents of misconduct of which Dr. Straus is accused occurred years before the suit was filed.
The record also indicates that Lawson, Prince and Kady were not offended by Dr. Straus' advances. As mentioned earlier, each of these women continued to flirt with him in the office, for example sitting in his lap and talking about sex with him, and continued to socialize with him outside of the office. All of these events took place during the periods of Dr. Straus's alleged sexual misconduct.
Although we find that the conduct of which Dr. Straus is accused constitutes extreme and outrageous behavior, it appears that in this particular working environment with Lawson, Kady and Prince, not only did this conduct not rise to the level of causing severe distress, but was to some extent encouraged.
Lawson, Prince and Kady bear the burden of proof by a preponderance of the evidence. See Lebeaux v. Newman Ford, Inc., 28,609 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291, 1296. Credibility is of paramount importance when trying to prove a case of sexual misconduct. See LK. v. Reed, 93-659 (La.App. 3 Cir. 2/2/94), 631 So.2d 604, 608, writ denied 94-0544 (La.4/29/94), 637 So.2d 461. In this case the credibility of all parties, Lawson, Prince, Kady and Dr. Straus, is seriously questionable. Although this Court questions the propriety of the conduct of which Dr. Straus is accused, we cannot locate in the record before us sufficient evidence that his actions were unwelcome, offensive, or severely distressing to Lawson, Kady or Prince in the case sub judice. Therefore, we find no error by the jury in finding for Dr. Straus on the issues outlined above.

VICARIOUS LIABILITY
Because we find, after careful review of the record, that Dr. Straus' conduct did not rise to the level of sexual harassment, intentional infliction of emotional distress, nor sexual battery, we also find no liability on the part of the Eye Center, Insurance Company of North America, St. Paul Fire and Marine Company, and Continental Casualty *242 Company. We pretermit discussion of the other issues raised by the Lawson, Prince and Kady in this appeal.

DECREE
For the reasons stated herein, we find that the trial court did commit reversible error, and we therefore conducted a de novo review of the record. Having reviewed the record, we find no liability for Dr. Straus, the Eye Center, INA, St. Paul, or CCC. Each party must pay his costs.
REVERSED AND RENDERED.
NOTES
[1] Now, La. R.S. 23:332.