*891
 
 ROLAND L. BELSOME, Judge.
 

 | tThe instant litigation arises from a disputed fact pattern where it is alleged that the defendant/appellee, Clinton Poche, backed out of a parking space, making contact with the vehicle occupied by the plaintiffs/appellants, Christian Delo Reyes and Karen Serpas, causing injuries. At the conclusion of a two day jury trial, a verdict was returned on behalf of the defendant driver and his insurer, Liberty Mutual.
 

 At some point during jury deliberations a verdict was returned. According to the trial judge, she noticed the response to question number one on negligence was invalidly answered. Consequently, the trial judge entered the jury deliberation room without a court reporter or counsel for the parties and engaged the jurors in dialogue. The only record of this meeting is a description outlined by the trial judge after the jurors were dismissed. Her account is as follows:
 

 THE COURT: Let me put this on the record just so we can continue to be thorough. The jury returned the verdict form with the question: Do you find the defendant, Clinton Poche, was negligent? The answer was no. So say seven of 12 jurors. They proceeded then to questions two and three.
 

 | gQuestion two: Was Clinton Poche’s negligence a legal cause of Christian Delo Reyes’ injury [sic]? They said no. So say 12 of 12 jurors.
 

 As to question number three: Was Clinton Poche’s negligence a legal cause of Karen Serpas’ injuries? They said no. So say 12 of 12 jurors. I might have on that verdict come into the courtroom and said they rendered a verdict because they reached 12 of 12 on those two critical questions, but because they did not reach nine of 12 on question number one, that’s when I went back in there and said to them that they should reach nine of 12 on the first question. They agreed to do that.
 

 I shared this with you when I went in to talk with them before they returned the verdict. The question they asked me when I went in was to redefine negligence for them. I redefined negligence for them. I redefined negligence as conduct which falls below the standard of reasonableness for people in similar circumstances. That’s how I answered that question. One of the jurors then said will you confirm — and I told them I had to really be careful about answering your questions, but you ask them and I’ll decide whether I can answer them. One question was can we know the amount of the settlement that was received by the plaintiff. I said no. I don’t even know that.
 

 The next question was — let me stop for a second. That question with respect to the amount of settlement was said before they ever began deliberating so that was the first time I went into the room. This round I again admonished them that I have to be careful of answering their questions and just really referred them back to the jury charges, so the juror said can you confirm for me that in deciding negligence the plaintiff basically has to prove that beyond a doubt. That was the question asked of me. I said I’m going to direct you to the jury charges where I said that every element of a party’s case has to be proved by a preponderance of the evidence. I did not instruct you on beyond a reasonable doubt which is a different standard. That was the extent of my answer on that question. And I shared all of this with you all before they came back with their jury verdict so that if you all had any objections, I could go
 
 *892
 
 back and clear it up. There were no objections to that.
 

 * * * * * *
 

 That was prior to their reaching an announced verdict. They then five or ten minutes later said we have a verdict. ...
 

 [¡¡The general rule is that it is improper for the trial judge to engage in
 
 ex parte
 
 communication with the jury.
 
 See
 
 La. C.C.P. art. 1796 and
 
 Jones v. Black,
 
 95-2530 (La.6/28/96), 676 So.2d 1067. There are exceptions to the general rule, as discussed by this Court in
 
 Brooks v. Wiley,
 
 2007-1035 (La.App. 4 Cir. 6/4/08), 985 So.2d 1269. The trial judge in
 
 Brooks
 
 conducted an
 
 ex parte
 
 discussion with jurors regarding scheduling options for continued deliberations. This Court acknowledged the mandate of La. C.C.P. art. 1796 regarding the delivery of additional instructions to the jury,
 
 [1]
 
 but also recognized that there are times when the trial judge is called upon to have communications with jurors in more of an administrative capacity such as managing the deliberation schedule, lunch, and breaks. Ultimately this Court concluded that the
 
 ex parte
 
 communication the trial judge had with the
 
 Brooks’
 
 jurors was more managerial in nature and had no impact on the verdict, therefore did not constitute reversible error. Even though those types of communications have been deemed harmless, all
 
 ex parte
 
 communication with jurors is discouraged in order to protect the integrity of the process.
 

 In contrast, the Supreme Court, this Court and other circuit courts have consistently held that
 
 ex parte
 
 communications with jurors addressing legal issues such as delivering additional jury instructions constitutes reversible error.
 
 See Jones, supra, Carpenter v. Hannan,
 
 2001-0467, (La.App. 1 Cir. 3/28/02), 818 So.2d 226,
 
 Lawson v. Straus,
 
 1998-2096 (La.App. 4 Cir. 12/8/99), 750 So.2d 234|4and
 
 Owens v. Con-cordia,
 
 95-1255 (La.App. 3 Cir. 6/25/97), 699 So.2d 434. Under a strikingly similar set of facts, the
 
 Carpenter, supra,
 
 court examined this issue. In
 
 Carpenter,
 
 an appeal was taken from a jury verdict rendered after the trial court judge had entered the deliberation room on more than one occasion having
 
 ex parte,
 
 off the record communications with the jurors and presenting them with a revised verdict form.
 
 Id.
 
 Just as in the case
 
 sub judice,
 
 the trial judge dictated an account of the meetings into the record for counsel. On appeal the First Circuit characterized the judge’s actions as “impairing the administration of impartial justice” to an extent that warranted a new trial.
 
 Id.
 

 Likewise, we find that the trial judge’s actions in the present case constitute reversible error. Based upon the trial judge’s account of the conversations in this matter, she entered the jury deliberation room on more than one occasion and the
 
 ex parte
 
 dialog between the trial judge and the jurors included additional explanations
 
 *893
 
 of jury charges. These communications regarding legal issues were not recorded and are precisely what the courts have universally deemed reversible error,
 
 see Jones, supra, Ca,rpenter, supra, and Owens, supra.
 

 Upon a finding that reversible error has occurred, the only remaining question is whether, reviewing the record
 
 de novo,
 
 this Court can make the crucial determinations necessary to render judgment.
 
 See Jones, supra.
 
 The plaintiffs complain of debilitating injuries, similar to injuries sustained in a previous automobile accident, while the defendants are contesting the issue of negligence as well as causation. We find the allegations and defenses in the case
 
 sub judice
 
 are of a nature that necessitates the witnesses’ credibility be taken into account to such a 15degree that rendering a just verdict on a cold record would not be possible. Thus, we remand the matter for a new trial.
 

 Finally, we address the appellees argument that whether the trial judge’s
 
 ex parte
 
 communications were in error is of no consequence because the appellants failed to object on the record. According to the uniform rules, Courts of Appeal, Rule 1-3, this Court will not review issues raised for the first time on appeal, “unless the interest of justice clearly requires otherwise.” We find that under the facts and circumstances of this case, it is in the interest of justice to allow the parties the right to appeal.
 

 Accordingly, the trial court judgment is vacated and the case is remanded for new trial.
 

 TRIAL COURT JUDGMENT VACATED; REMANDED FOR NEW TRIAL.
 

 [1]
 

 . Art. 1796. Additional instructions
 

 A. If the jury, after retiring for deliberation, desires to receive information on any point of law, they shall be conducted to the courtroom.
 

 B. After giving notice to the parties, the court may give the appropriate instructions.
 

 C. The court, after giving notice to the parties, may recall the jury after they have retired: (1) To correct or withdraw and erroneous instruction.
 

 (2) To clarify an ambiguous instruction.
 

 (3) To inform the jury on a point of law which should have been covered in the original instructions.
 

 (4) To give such further instructions as may be appropriate.