| KEYON YOUNGBLOOD AND JOSHUA YOUNGBLOOD | * | NO. 2022-CA-0202 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| DEONE HAMPTON, REINHART TRANSPORTATION, LLC, AND ACE AMERICAN INSURANCE COMPANY | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03416, DIVISION "F-14"
Honorable Jennifer M. Medley
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Pro Tempore James F. McKay, III)

Vanessa Motta
MOTTA LAW LLC
3632 Canal Street
New Orleans, LA 70119

    COUNSEL FOR PLAINTIFF/APPELLANT


D. Russell Holwadel
Phillip Joseph Rew
ADAMS HOEFER HOLWADEL & EDLRIDGE, L.L.C.
400 Poydras Street
Suite 2450
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**DECEMBER 9, 2022**

This is a personal injury case.  Plaintiffs, Keyon Youngblood ("Keyon") and

Joshua Youngblood ("Joshua"), appeal the trial court's judgments dismissing their

claims with prejudice, following the return of jury verdicts in favor of Defendant,

Deone Hampton.  For the reasons that follow, we affirm the trial court's

judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Keyon Youngblood was in an automobile accident with Mr. Hampton on the

edge of the French Quarter while Mr. Hampton was in the course and scope of his

employment as a truck driver for Reinhart Food Services, LLC ("Reinhart").

Keyon and his brother, Joshua (collectively, "Plaintiffs"), sued Mr. Hampton,

Reinhart Transportation Company, LLC[1], and Reinhart's insurer, Ace American

Insurance Company (collectively, "Defendants") for damages.  Plaintiffs claim

they were both in Keyon's vehicle at the time of the accident and sustained neck

---

[1] Reinhardt Transportation Company, LLC, is a distinct entity from Reinhardt Food Services, LLC, Mr. Hampton's employer.  Plaintiffs did not add Reinhardt Food Services, LLC, as a defendant and only Mr. Hampton appeared on the verdict form at trial.

and back injuries.  Defendants answered the suit, denying liability and denying that Joshua was in the vehicle at the time of the accident.

The case proceeded to a four-day jury trial.  Witness testimony and documentary evidence established that the accident occurred while the vehicles were travelling westbound on Rampart Street just past Canal Street at approximately 6:39 a.m.  Mr. Hampton was in a large box truck attempting to turn right onto Iberville Street while Keyon passed him on the right in his pickup truck. The two vehicles made contact, causing Mr. Youngblood's tire to blow out and other alleged, unspecified damage to his pickup truck.  After the accident, Keyon and Mr. Hampton each called 911 and requested an ambulance for Keyon.  The remaining facts of the accident were disputed,[2] as was the necessity of Plaintiffs' medical treatment and Joshua's presence in Keyon's vehicle at the time of the accident.

Plaintiffs testified that, before the accident, Joshua called Keyon to ask Keyon to pick him up at the end of his shift as a street sweeper with Empire Services.  According to Plaintiffs, the accident occurred after Keyon picked up Joshua while Joshua was in Keyon's truck.  But, Mr. Hampton testified that Keyon was alone in his truck during the accident; and, Joshua arrived at the scene later in a brown Buick with a female companion.

In support of their version of events, Defendants introduced bodycam footage from a responding police officer that showed Joshua attempting to replace

---

[2] The jury found both Keyon Youngblood and Mr. Hampton were equally at fault in causing the accident.  Plaintiffs have not appealed this finding.

Keyon's flat tire more than an hour after the accident. Nearby was a brown Buick, and an unidentified woman stood near Joshua watching him attempt to change the truck's tire. Defendants also called Ricardo Leal, a T-Mobile employee, tendered and accepted by the trial court as an expert in historical cell site records, who reviewed T-Mobile records for calls between Keyon and Joshua and testified that at 6:41 a.m., 6:45 a.m., 6:53 a.m., and 7:03 a.m. Joshua's cellphone received incoming calls from Keyon's cellphone. From T-Mobile's data, Mr. Leal determined that the initial incoming calls to Joshua were routed through a cellphone antenna located on Behrman Highway in Terrytown, Louisiana, several miles from the accident scene, suggesting that his cellphone was somewhere near the Behrman Highway cellphone antenna. Lastly, in defense of Joshua's claims, Defendants called a representative of Empire Services—the company Joshua claimed to have worked for on the morning of the accident—who testified that Joshua had been terminated three months before the accident. Defendants introduced personnel documents from Empire Services corroborating Joshua's termination date.

Plaintiffs received treatment for their alleged injuries from several medical providers, including a chiropractor, a neurosurgeon, and an interventional pain medicine doctor, each of whom testified at trial. Each medical provider opined that Plaintiffs' injuries were caused by the accident, necessitating the provided treatment. But, each medical provider admitted on cross-examination that they were unaware of Plaintiffs' history of motor vehicle accidents, their earlier claims

3

of injuries similar to those claimed in the instant action, and their earlier medical treatment for similar injuries. Defendants also introduced documents obtained from local scrapyards that indicated Keyon unloaded and sold thousands of pounds of scrap metal in the weeks after the accident and video footage showing Keyon unloading heavy scrap metal and old appliances from his pickup truck.[3]

At the conclusion of the trial, the jury returned a unanimous verdict finding that Joshua was not in Keyon's truck during the accident. The jury further found that Mr. Hampton and Keyon were equally at fault for the accident but found that the accident was not the proximate cause of Keyon's alleged injuries.

### DISCUSSION

Keyon and Joshua Youngblood assign twelve errors to the trial court.[4] We address each below, but address assignment of error number ten out of sequence.

I.    *Ex Parte Communication between the Judicial Law Clerk and the Jury*

Plaintiffs contend that the trial court erred in permitting a judicial law clerk to engage in *ex parte* communication with the jury during its deliberations. The jury was provided with separate verdict forms for Keyon and Joshua containing jury interrogatories agreed upon by both parties. After retiring for deliberations, the jury returned the verdict forms for both Keyon and Joshua. The trial judge found an unspecified error in the jury's verdict form for Keyon and instructed the jury to again retire to the jury room to complete the jury interrogatories for Keyon.

_____

[3] Keyon Youngblood testified that before the accident he made money by selling scrap metal and other old and broken appliances and metal objects to local scrapyards.

[4] The Youngblood's twelfth assignment of error seeks review of the trial court's judgment taxing them with all costs. Because this judgment is not in the appellate record, we do not address it.

The trial judge instructed her law clerk to lead the jury into the jury room. Later, the law clerk returned to the courtroom and informed the trial judge and counsel for both parties that the jury had questions about completing the Keyon's verdict form. Specifically, the law clerk stated the following:

Law Clerk:

So the first question by the jurors was they wanted to know if they still had to fill in Question No. 5 regarding the percentages to Deone Hampton and the percentages of Keyon Youngblood because of their responses to some of the other questions.

….

And then they also had questions regarding what the allocation of the percentages meant for the case. Like what it meant for the defendant and what it meant for the plaintiff in allocating percentages. And then they wanted to know if the 9 out of 12 people were still needed to come up with the percentages on Question No. 5.

Mr. Holwadel [Defense Counsel]:

Yeah, I want everything.

The Court:

Yes --

Law Clerk:

Yes. I told them every --

Mr. Holwadel:

Okay. Thank you.

Law Clerk:

9 out of 12 people had to agree for all the questions that were asked.

The Court:

Yeah.

5

Mr. Sutton [Plaintiffs' Counsel]:

> So we might be here a while then.
…

Law Clerk:

> When I told them just 9 out of 12 people had to agree on the percentages and stuff, that seemed to ease them a little bit. Because for some reason, they thought that it – like all of them had to be in agreement for the percentages of fault, and then they just kind of misunderstood what everything meant.

When the jury returned to the courtroom with a completed verdict form for Keyon, the law clerk read both verdict forms aloud. The jury found unanimously that Joshua was not a passenger in Keyon's pickup truck at the time of the accident, awarding him nothing. As to Keyon, the jury found that Mr. Hampton was negligent in causing the accident but in the next interrogatory found that Mr. Hampton's negligence was not a proximate cause of any damages claimed by Keyon. Because the jury answered this interrogatory in the negative—finding Keyon failed to prove an essential element of his claim—the verdict form instructed the jury to sign the form and return it to the courtroom. However, the jury continued to answer some, but not all, of the remaining jury interrogatories, finding that Keyon was also negligent in causing the accident, assigning fifty percent fault to both drivers, and awarding Keyon no damages.

Plaintiffs argue the law clerk's admission—that she told the jury they had to agree to each jury interrogatory answer by a nine-person majority —constitutes reversible error. Further, Plaintiffs point to a statement from the law clerk during her recitation of Keyon's verdict form as evidence that the law clerk gave additional *ex parte* instructions to the jury that were not disclosed to the trial court and the parties. Specifically, the jury did not answer jury interrogatory number 4,

6

which asked whether the jury found that Keyon's negligence was a proximate cause of any damages claimed by him. After reading interrogatory number 4, the law clerk stated, "the answers are left blank *as instructed*." (emphasis added). Plaintiffs claim that, because the jury interrogatory form did not instruct the jury to leave interrogatory number 4 blank, only the law clerk could have instructed the jury to leave it blank. Moreover, Plaintiffs speculate that the law clerk could have given the jury any number of additional *ex parte* instructions while outside the courtroom.

Plaintiffs' arguments regarding the law clerk's alleged *ex parte* communications are raised for the first time on appeal. Plaintiffs failed to object at trial, failed to question the trial court or law clerk regarding the *ex parte* communications, and failed to raise the issue in their motion for new trial. Defendants argue that Plaintiffs have waived their right to appeal this issue. We agree.

"The right to attack on appeal an allegedly improper instruction given after that case has been submitted to the jury must be preserved by an objection made at the time the supplemental instruction is given." *West v. Nat'l R.R. Passenger Corp.*, 03-1707, pp. 4-5 (La. App. 4 Cir. 6/23/04), 879 So.2d 327, 331 (citing *Berrera v. Hyundai Motor America Corp.,* 92-2108, (La. App. 4 Cir. 1993), 620 So.2d 890, 893). In *West*, this court stated:

> The policy considerations underlying these rules are obvious. As the court stated in *Renz,*[5] 'Counsel may not permit or acquiesce in an easily corrected procedural error and then, *after* an adverse verdict, urge such error for the first time as a ground for setting aside a jury verdict reached by the expensive and cumbersome method of a jury trial.'

---

[5] *Renz v. Texas & Pacific Railway Co.*, 138 So.2d 114 (La. App. 3d Cir. 1962).

*Id.*

Despite their failure to object to the law clerk's *ex parte* communication, Plaintiffs urge this court to follow *Lawson v. Straus*, 98-2096 (La. App. 4 Cir. 12/8/99), 750 So.2d 234, and *Delo Reyes v. Liberty Mut. Fire Ins. Co.*, 08-0769 (La. App. 4 Cir. 2/18/09), 9 So.3d 890, and reverse the trial court's judgment regardless of their acquiescence. In both *Lawson* and *Delo Reyes*, this court found that a trial judge's conduct so impaired the administration of impartial justice that reversal was necessary in the interest of justice, despite the absence of a contemporaneous objection. 98-2096, pp. 6-7 750 So.2d at 239; 08-0729, p. 5, 9 So.3d at 893. The *Lawson* trial judge repeatedly entered the jury room outside of the presence of plaintiff's counsel, answered multiple questions from jurors, and indicated to the jury that he would declare a mistrial if they did not reach a verdict. 98-2096, p. 3, 750 So.2d at 237.[6] In *Delo Reyes*, the trial judge entered the jury room on multiple occasions during deliberations without notice to the parties and explained legal issues to the jury, including negligence standards and burdens of proof. 08-0729, p. 2, 9 So.3d at 891.

Unlike the *ex parte* communications at issue in *Lawson* and *Delo Reyes*, we do not find that the law clerk's statement to the jury in this case warrants consideration given that no objection was lodged in the trial court. Contrary to Plaintiffs' claims, the record reflects only one *ex parte* statement to the jury—confirming the written jury instruction, agreed upon by both parties, that the jury must reach a nine-person majority for each interrogatory on the verdict form.

---

[6] Moreover, the *Lawson* court found that the trial court's failure to notify the plaintiffs' counsel of its plan to speak with the jury prevented the plaintiffs from objecting contemporaneously. *Id.* 98-2096, p. 7, 750 So.2d at 239.

While *ex parte* communication concerning any point of law between judicial staff and the jury should be avoided, we do not find that the law clerk's statement reiterating a written jury instruction, impaired the administration of impartial justice.

Moreover, we find Plaintiffs' speculation that the law clerk gave the jury additional *ex parte* instructions—based on the law clerk's statement that Keyon's jury interrogatory number four was left blank "as instructed"—baseless. The verdict form for Keyon explicitly instructed the jurors that, if they found Mr. Hampton's negligence was not a proximate cause of any damages claimed by Keyon, they were to sign the form and return it to the courtroom, leaving the remaining interrogatories blank. Having found no proximate cause between Mr. Hampton's negligence and Keyon's claimed damages, the law clerk's statement that the jury left interrogatory number four blank, as instructed, was accurate.

Accordingly, Plaintiffs' first assignment of error is unpersuasive.

II. *Evidentiary Rulings*

Plaintiffs next assign error to various evidentiary rulings made before and during trial. We address the standard of review and legal principles applicable to all of these issues before addressing each assignment of evidentiary error.

"A trial court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion." *Alfred Conhagen, Inc. of Louisiana v. Ruhrpumpen, Inc.*, 21-0396, p. 5 (La. App. 4 Cir. 4/13/22), 338 So.3d 55, 62 (internal citation omitted). The abuse of discretion standard is highly deferential to the trial court unless the court exercised its discretion based upon an erroneous view of the law or a clearly erroneous view of the facts. *Tran v. Collins*,

9

20-0246, p. 5 (La. App. 4 Cir. 8/20/21), 326 So.3d 1274, 1279 (citing *Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, 14-0843, p. 2 (La. App. 4 Cir. 12/17/14), 156 So.3d 1234, 1237). If an appellate court finds the trial court erred in its decision to admit or exclude evidence, the appellate court must evaluate whether the errors, cumulatively, are prejudicial to the extent they constitute reversible error. *Lovecchio v. Romain*, 19-0779, p. 11(La. App. 4 Cir. 3/25/20), 2020 WL 1465943, *5.

In their second assignment of error, Plaintiffs argue that the trial court erred in excluding documents from the Louisiana Department of Public Safety which they contend were to impeach Mr. Hampton's testimony concerning the status of his commercial driver's license at the time of the accident. Defendants objected to introduction of this evidence on the basis that Plaintiffs had not disclosed it before attempting to introduce it at trial. The trial court agreed, reasoning that the pretrial order required that all exhibits, including impeachment evidence, be exchanged before trial.[7] Moreover, before trial, the trial court granted Plaintiffs' own motion *in limine* requesting the exclusion of all evidence—including impeachment exhibits—not disclosed before trial.[8] Defendants argue that it would be patently unjust to impose this rule against Defendants and not Plaintiffs. We agree.

Plaintiffs cite *Tew v. USAA*, 21-1166 (La. App. 1 Cir. 9/29/21), 2021 WL 4458840 (*unpub.*), in support of their argument. We do not find *Tew* persuasive. The finding in *Tew*, that impeachment evidence is exempt from pretrial disclosure

---

[7] The trial court also expressed doubt that the status of Mr. Hampton's commercial driver's license was relevant to his liability for the accident.

[8] In their motion, Plaintiffs argued, "Defendants should be prohibited from any reference, verbal or documentary, to any witnesses, testimony or documents when the identity or reports of such witnesses or documents were not specifically (not generically) disclosed in the discovery process."

was based on the Nineteenth Judicial District Court's Rules of Court, which exempt impeachment evidence from disclosure prior to trial. *Id.* No such rule exists in Orleans Civil District Court. Moreover, Plaintiffs obtained the documents at issue before trial and, in light of Mr. Hampton's deposition testimony, knew the documents were likely to be introduced at trial. Given their advanced knowledge of these documents and their own motion *in limine*, Plaintiffs' failure to disclose the documents in advance of trial violated both the spirit and the letter of the pretrial order. *See Gallow v. Jack Eckerd Corp.*, 630 So.2d 970, 972 (La. App. 3d Cir. 1994) (affirming exclusion of undisclosed impeachment evidence in violation of pretrial order). Accordingly, we find no abuse of discretion in the trial court's exclusion of the Louisiana Department of Public Safety records from evidence at trial.

In their third assignment of error, Plaintiffs argue the trial court erred in preventing them from impeaching Mr. Hampton with the audio recording of his 911 call. Plaintiffs allege this recording would impeach Mr. Hampton's trial testimony that he looked into Keyon's truck—where Joshua claimed to be sitting—and saw no one there. But, the audio recording was not introduced into evidence or proffered in the trial court, leaving this court with nothing to review. *Melerine v. O'Connor*, 13-1073, p. 8 (La. App. 4 Cir. 2/26/14), 135 So.3d 1198, 1205 (observing, "[a] court of appeal is a court of record, which must limit its review to evidence in the record before it. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence." (citing La. C.C.P. art. 2164; *Board of Directors of Industrial Development Bd. of City of New Orleans v. All Taxpayers, Property Owners, Citizens of New Orleans,* 03-0826, p. 4 (La. App. 4 Cir. 5/29/03), 848 So.2d 740, 744)).

11

Plaintiffs also contend that the trial court erred in preventing them from impeaching Mr. Hampton with his own answer to Plaintiffs' petition for damages, in which he asserted in an affirmative defense that the negligence of Keyon and/or Joshua contributed to the alleged accident and injuries. But, the record contains no ruling from the trial court on this matter. Finding nothing in the record to review in regard to this assignment of error, we find no error by the trial court.

In their fourth assignment of error, Plaintiffs argue the trial court erred in permitting Defendants to present evidence that Joshua was not in Keyon's vehicle at the time of the accident. Likewise, Plaintiffs claim the trial court erred in permitting a jury interrogatory questioning whether the jury found that Joshua was in the vehicle during the accident. Plaintiffs contend that Defendants failed to affirmatively plead fraud in their answer; thus, they claim the trial court erred in permitting the evidence of Joshua's presence elsewhere and the jury interrogatory concerning Joshua's presence in Keyon's vehicle at the time of the accident.

The record demonstrates that Defendants denied Joshua Youngblood's involvement in the accident from the outset—including in their initial answer— through the end of trial. This defense sought to disprove essential elements of Joshua's claim and neither raised a new matter nor raised a defense which assumed his claim to be true. Thus, it was not an affirmative defense; rather, it was a negative defense that need not be affirmatively pleaded. *See Keller v. Amedeo*, 512 So.2d 385, 388 (La. 1987). Accordingly, we find Plaintiffs' fourth assignment of error unpersuasive.

In their fifth assignment of error, Plaintiffs argue that the trial court erred in denying their motion for spoliation of evidence regarding allegedly missing dashcam footage from the truck driven by Mr. Hampton and an allegedly missing

report of corrective training, automatically generated by the dashcam software ("coaching sessions").  Plaintiffs contend that the original dashcam footage from the truck and the coaching session was intentionally destroyed or concealed by Defendants because the video and report recorded the actual time of the accident, which they claim on appeal was much later than the 6:39 a.m. accident time claimed by Defendants, based on the driver's log in Mr. Hampton's truck.

According to Plaintiffs, Mr. Hampton and Reinhardt's representative Ken Cosby lied about the time of the accident to make it appear that the four calls from Keyon to Joshua at 6:41 a.m., 6:45 a.m., 6:53 a.m., and 7:03 a.m. were made within minutes of the accident to fit within the Defendants' theory that Joshua was not involved in the accident and arrived later after Keyon notified him of the accident.  Plaintiffs, however, submitted no evidence to demonstrate that Defendants intentionally destroyed the allegedly missing footage or coaching session.  *See Roussell v. Circle K Store, Inc.*, 21-0582, p. 4 (La. App. 1 Cir. 12/22/21), 340 So.3d 52, 56 (observing that spoliation requires "an intentional destruction of evidence for the purpose of depriving the opposing parties of its use in pending or anticipated litigation.").

Moreover, in sworn trial testimony, Joshua conceded that the accident happened at or very near the time claimed by Defendants.  On redirect examination, Joshua claimed that he did in fact receive the four calls from Keyon in the twenty-five minutes after the accident, but he claimed both he and Keyon were at the accident scene when the calls were received.  Keyon, Joshua explained, was outside of the pickup truck calling Joshua, who was inside the pickup truck, to tell him to remain in the truck.  He alleged these calls were made despite Plaintiffs being within speaking distance of each other.  Further, Plaintiffs' own proffered

13

exhibits one and two—written reports of 911 calls by Keyon and Mr. Hampton—indicate that both men called 911 to report the accident at 6:50, within ten minutes of the Defendants' reported accident time.  Accordingly, we find no error in the trial court's ruling denying Plaintiffs' motion for spoliation.

In their sixth assignment of error, Plaintiffs argue the trial court erred in permitting Ricardo Leal to offer expert testimony on the location of Keyon's and Joshua's cellphones when calls were made between them.

"[T]he trial court is afforded wide discretion in determining whether expert testimony should be admitted and who should or should not be qualified as an expert.  A trial court's decision to qualify an expert will not be overturned absent an abuse of discretion." *Boudreaux v. Bollinger Shipyard*, 15-1345, p. 15 (La. App. 4 Cir. 6/22/16), 197 So.3d 761, 770–71 (internal citations omitted).  In opposition to Plaintiffs' motion to exclude or limit the testimony of Mr. Leal, Defendants attached Mr. Leal's resume and an affidavit, in which he attested to testifying in more than 350 trials.  In 20-25% of those trials, he interpreted cell phone records to determine the location and movement of cellphones relative to towers used to make or receive calls. He has been accepted as an expert in courts in California, Michigan, and Maryland. *See, e.g.*, *People v. Martin*, B239366, 2014 WL 3736212, at *11 (Cal. Ct. App. July 30, 2014) (*unpub.*).  Moreover, at trial, he testified that he had more than eighteen years of experience analyzing historical cell site records.  Considering Mr. Leal's experience and expert testimony history, we cannot say the trial court abused its discretion in permitting him to testify on the location of Plaintiffs' cellphones.

In their seventh assignment of error, Plaintiffs argue the trial court erred in permitting Reinhart's corporate representative, Ken Cosby, to testify because Mr.

Cosby did not appear on either parties' witness list. "A trial judge has great discretion in conducting a trial, which discretion includes the admissibility of witness testimony." *Tassin v. State Farm Mut. Auto. Ins. Co.*, 20-00652, p. 2 (La. 10/14/20), 302 So.3d 1098, 1099. In this instance, the trial court reasoned, despite Defendants' failure to list Mr. Cosby on their witness list, Plaintiffs were aware of Mr. Cosby for more than two years before trial and had taken Mr. Cosby's deposition before trial. Finding no prejudice to Plaintiffs, the trial court admitted Mr. Cosby's testimony. Considering the absence of any prejudice, we find no error in permitting Ken Cosby to testify at trial.

In their eighth assignment of error, Plaintiffs argue the trial court erred in allowing Defendants to introduce surveillance videos of Keyon unloading scrap from his truck. The videos, obtained from surveillance footage at New Orleans scrapyards, depict Keyon pushing and lifting heavy objects from his truck bed, including heavy appliances, such as a stove, a washer and dryer, a water heater, and a refrigerator. Plaintiffs contend that the videos, taken between December 12, 2018 and March 25, 2019, were irrelevant and should have been excluded at trial, because they were recorded after Keyon underwent surgery.

"Surveillance videotape ostensibly picturing a personal injury plaintiff engaged in physical activity is highly relevant to the plaintiff's claim for damages as the result of physical injury. Such surveillance videotape could be used as substantive, corroborative, or impeachment evidence at trial." *Wolford v. JoEllen Smith Psychiatric Hosp.*, 96-2460, p. 2 (La. 5/20/97), 693 So.2d 1164, 1166. Keyon claimed severe and ongoing pain at trial. He likewise claimed his ability to work as a scrapper was impaired, because he could not lift heavy objects or unload

anything from his truck by himself and required a paid helper.[9]  Keyon also claimed the accident totaled his truck, requiring him to get a new truck.  The video evidence at issue undermined Keyon's testimony on all three points, depicting him lifting heavy objects, despite his claims of severe pain; driving the same truck he claimed was totaled during the accident; and selling scrap without a paid helper.  Moreover, Defendants disclosed the video surveillance sufficiently in advance of trial to prevent any undue prejudice to Plaintiffs.  Accordingly, we find no error in the trial court's judgment permitting the surveillance videos to be shown at trial.

In their ninth assignment of error, Plaintiffs argue the trial court erred in preventing them from introducing evidence that Reinhardt failed to perform a preventability assessment[10] after the accident and failed to submit Mr. Hampton to drug and alcohol testing within two hours of the accident.  Plaintiffs do not explain how Reinhardt's failure to perform a preventability assessment after the accident is relevant.  Plaintiffs did not assert any independent negligent claims against Reinhardt, and Reinhardt's failure to perform a preventability assessment after the accident has no bearing on Mr. Hampton's credibility or his fault in causing the accident.  Moreover, given the jury's finding that Mr. Hampton was at fault, Plaintiffs have failed to demonstrate any prejudice by the trial court's exclusion of Reinhardt's failure to perform a preventability assessment.  Plaintiffs likewise fail to explain the relevance of Reinhardt's late drug and alcohol testing of Mr. Hampton.  The record is devoid of any evidence or allegation suggesting Mr.

---

[9] Keyon never identified his helper by anything more than a first name—Jake—despite requests for his full name, his location, or contact information.

[10] A preventability assessment is a determination of corrective action that could be taken to prevent the reoccurrence of an accident.

Hampton was impaired at the time of the accident. Accordingly, we find this assignment of error unpersuasive.

In their eleventh assignment of error, Plaintiffs contend the trial court erred in denying their motion to compel service of a trial subpoena on Rico Papillion, the passenger in Mr. Hampton's truck, through defense counsel. Mr. Papillion is not a party to this case and resides beyond the trial court's subpoena power. Mr. Papillion retained Defendants' attorneys to obtain from Plaintiffs an alleged recorded statement of him. Pursuant to La. C.C.P. art. 1424 (B)[11], defense counsel appeared on behalf of Mr. Papillion and moved the trial court to order Plaintiffs to produce the statement to Mr. Papillion. The parties dispute whether defense counsel's representation of Mr. Papillion to obtain his recorded statement constituted a general appearance subjecting him to the jurisdiction of the trial court.

We, however, need not decide this issue, as Plaintiffs have failed to make any showing of prejudice from the trial court's denial of their motion to compel. Plaintiffs have not stated how Mr. Papillion's testimony could have altered the outcome of the trial. To the contrary, Plaintiffs' counsel represented in earlier pleadings that she "felt satisfied that Mr. Papillion did not know anything sufficient to add to the liability or facts in this case." Further, when Defendants moved to take Mr. Papillion's deposition for the perpetuation of his testimony at trial, Plaintiffs opposed the motion. Considering Plaintiffs' failure to articulate any

---

[11] La. C.C.P. art. 1424(B) provides, in pertinent part: "[u]pon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person."

prejudice caused by the trial court's ruling, we find this assignment of error unpersuasive.

### III. *Sufficiency of the Evidence*

In their tenth assignment of error, Plaintiffs claim there was insufficient evidence to support the jury's decision awarding them no damages. We disagree.

Defendants introduced ample evidence to support the jury's finding that Joshua was not involved in the accident and that Keyon's alleged injuries were not proximately caused by the accident. The locations of his cellphone location suggest Joshua was nowhere near the accident. Likewise, the sequence of Keyon making four calls to Joshua within twenty-five minutes of the accident suggest that Joshua was not involved in the accident. And Joshua's explanation, after being confronted with these records, that Keyon called Joshua four times to tell him to remain in the truck when both were allegedly at the accident scene, was not convincing.

Plaintiffs' shifting testimony regarding the facts of the accident, their prior medical and accident history, and their medical treatment after the accident likewise undermined their credibility and the reliability of their doctors' testimony. Keyon's claims that he could not lift or move heavy objects after the accident, that he could no longer sell scrap by himself after the accident, and that his truck was totaled by the accident—proven demonstrably false by video evidence—provided additional evidence undermining Plaintiffs' credibility. In sum, the jury had ample evidence to support its zero damage award. We find no merit in this assignment of error.

### DECREE

For the foregoing reasons, the judgment of the trial court dismissing Keyon and Joshua Youngblood's claims against Deone Hampton, Reinhart Transportation, LLC, and Ace American Insurance Company is affirmed.

**AFFIRMED**